Josephine GOSS, and Thomas A. Goss, Infants, by Ralph Goss, Their Father and Next Friend, et al., Appellants,

v.

The BOARD OF EDUCATION OF the CITY OF KNOXVILLE, TENNESSEE, a Body Corporate or Continuous Legal Entity, c/o Dr. John H. Burkhart, President, et al., Appellees.

No. 14425.

United States Court of Appeals
Sixth Circuit.

April 3, 1962.

Avon N. Williams, Jr., Nashville, Tenn., and Jack Greenberg, New York City, for appellants, Carl A. Cowan, Knoxville, Tenn., Z. Alexander Looby, Nashville, Tenn., Jack Greenberg and Thurgood Marshall, New York City, on the brief.

S. Frank Fowler, Knoxville, Tenn., for appellees, Claude K. Robertson, Fowler, Rowntree & Fowler, Knoxville, Tenn., on the brief.

Before CECIL, WEICK and O'SULLIVAN, Circuit Judges.

CECIL, Circuit Judge.

This cause is before the Court on appeal from an order of the United States District Court for the Eastern District of Tennessee, Northern Division, concerning the desegregation of the school system of the city of Knoxville, Tennessee.

The appellants were plaintiffs in the District Court and are all Negro citizens of the United States and state of Tennessee, and residents of the city of Knoxville. They are children who were attending the public schools of Knoxville, at the time this action was begun, and their parents or guardians. The action was brought by the named plaintiffs for themselves, individually, and on behalf of all persons resident of Knoxville, similarly situated.

The appellees were defendants in the District Court and are members of the school board of the city of Knoxville, together with the superintendent of schools and other administrative officers of the Knoxville school system. They are sued in their official capacities and as individuals.

The parties will be referred to hereinafter, respectively, as plaintiffs and defendants.

The complaint was filed on December 11, 1959, and invoked jurisdiction by virtue of sections 1331, 1343, 2201 and 2202, Title 28 U.S.C. and sections 1981 and 1983, Title 42 U.S.C.A. By their complaint, the plaintiffs seek orders restraining the defendants from refusing to admit the named plaintiffs to certain schools operated by them as so-called "white"

schools, on account of plaintiffs' race or color; for an order declaring the custom, policy, practice or usage of excluding plaintiffs and other persons similarly situated from any schools of the city of Knoxville solely because of race, pursuant to certain constitutional and statutory provisions of the state of Tennessee, to be unconstitutional and void; for a permanent injunction restraining the defendants from operating their schools on a biracial basis, and in addition thereto for an order requiring the defendants to present to the Court a plan "designed to bring about good faith compliance with the decision of the Supreme Court of the United States in Brown v. Board of Education, 347 U.S. 483, [74 S.Ct. 686, 98 L.Ed. 873,] at the earliest practicable date throughout the Public School System of the City of Knoxville."

The defendants in their answer admit that the schools of Knoxville, at the time this action was begun, were operated on the basis of separate schools for white children and separate schools for Negro children. They say this was in accordance with constitutional and statutory provisions of the state of Tennessee (Art. 11, Sec. 12, Tenn.Const., Secs. 49–1005, 49–1107, and 49–3701, Tenn.Code.); that they did not feel that they could change this system without the compulsion of law; that the schools for Negroes were excellent and that there was no discrimination against them in the type of education they received; that while there were white teachers for white children and Negro teachers for Negro children, they were paid on the same basis; that since the Brown decision, they have studied plans of integration, but that up until this time delay has been well advised. They say they "owe no apologies to anyone, and make none."

After the complaint was filed, the trial judge gave the defendants until April 8, 1960, to submit a plan of integration. A plan was submitted in accordance with this order and the principal question now before this Court is whether that plan is adequate to comply with the decisions of the Supreme Court.

The plan called "Plan No. 9" provides for school zoning based upon location and capacity of school buildings and admission to schools by reason of residence in a zone without reference to race; discontinuance of racial segregation in steps of one grade a year, beginning with the first grade, effective with the school year, beginning 1960–61, and a system of transfers in which the following will be recognized as some of the valid conditions for transfer: "a. When a white student would otherwise be required to attend a school previously serving colored students only; b. When a colored student would otherwise be required to attend a school previously serving white students only; c. When a student would otherwise be required to attend a school where the majority of students of that school or in his or her grade are of a different race."

The plaintiffs objected to the plan for the reasons that, considering the five years that had already elapsed since the Brown decision, twelve years was too long a period to accomplish complete desegregation; that the board had not shown that the delay was necessitated by any administrative problems enumerated by the Court in the Brown decision; that it deprived Negro students already enrolled in school of an unsegregated education; that it deprived Negro students of an opportunity for education in certain vocational schools and summer courses, and that the transfer plan would operate to perpetuate segregation of the races in the public school system.

The case was tried to the court and a judgment entered on August 26, 1960. By this judgment, the court denied injunctive relief to the plaintiffs and approved the plan as submitted, except "that the defendants in this cause are hereby directed to restudy the problem presented with reference to the technical and vocational courses offered in the Fulton High School, to which colored students have no access, and present a plan within a reasonable time which will give the colored students who desire these technical and vocational courses an oppor-

tunity to take them." It was further ordered that the board should put the plan as approved into effect.

On May 17, 1954, the Supreme Court decided, in Brown v. Board of Education, 347 U.S. 483, 495, 74 S.Ct. 686, 692, 98 L.Ed. 873 (known as the first Brown case) "that in the field of public education the doctrine of 'separate but equal' has no place. Separate educational facilities are inherently unequal." The Court held that segregation of Negro and white children for school purposes on a racial basis deprived Negro children of equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States. Thereafter, the maintenance of "Negro" schools and "white" schools was a violation of the United States Constitution.

The Court, according to the second Brown decision, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, realized that the transition required by its first opinion, from a custom and practice of so long standing, could not be easily accomplished and that administrative problems would be encountered which would prevent immediate abandonment of the biracial systems then in effect.

The court said, at p. 299, at page 756 of 75 S.Ct.: "Full implementation of these constitutional principles may require solution of varied local school problems." And at p. 300, at page 756 of 75 S.Ct.: "In fashioning and effectuating the decrees, the courts will be guided by equitable principles. * * * While giving weight to these public and private considerations, the courts will require that the defendants make a prompt and reasonable start toward full compliance with our May 17, 1954 ruling." And finally, the classic admonition that the district courts should make such orders as were necessary to admit all students "to public schools on a racially nondiscriminatory basis with all deliberate speed."

It was thereby recognized that some planning would have to be done to adapt a particular local system to the new method of operation and that in the process the rights of some individuals would have to be subordinated to the common good of posterity. In Boson v. Rippy, 285 F.2d 43, the Fifth Circuit reversed the District Court when it ordered immediate en masse desegregation, and instructed it to require the board to submit a plan.

We appreciate that in such a transition, as is here involved, emotions are deeply stirred and sensitive feelings touched. But these must give way to the mandates of the Supreme Court. As that Court said in Cooper v. Aaron, 358 U.S. 1, 16, 78 S.Ct. 1401, 1409, 3 L.Ed.2d 5, 19, "law and order are not here to be preserved by depriving the Negro children of their constitutional rights."

■ It has been nearly eight years since the first Brown decision and under the plan before us the first and second grades are now integrated. The evidence does not indicate that the board is confronted with the type of administrative problems contemplated by the Supreme Court in the second Brown decision. That the operation of schools on a racially segregated basis is a violation of the Fourteenth Amendment and that the constitutional and statutory requirements of the state of Tennessee prohibiting the mixture of races in schools cannot be enforced are no longer debatable or litigable questions. This has been obvious and evident since May, 1954.

■ The position of the board that it would continue to operate under these unenforcible laws, until compelled by law to do otherwise, does not commend itself to the Court, for the acceptance of a plan that provides for a minimum degree of desegregation. In the second Brown case, the Court said, 349 U.S. at p. 300, 75 S.Ct. at page 756: "The burden rests upon the defendants to establish that such time is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date." In our judgment, the defendants have not sustained this burden. We do not think that the twelve-year plan of desegregation adopted at this late date meets either the spirit or specific requirements of the decisions of the Supreme Court.

■ The transfer feature of the plan comes under sharp criticism of the plaintiffs. They claim that the operation of such a plan will perpetuate segregation. We do not think the transfer provision is in and of itself illegal or unconstitutional. It is the use and application of it that may become a violation of constitutional rights. It is in the same category as the pupil assignment laws. They are not inherently unconstitutional. Shuttlesworth v. Birmingham Board of Education, 162 F.Supp. 372, D.C.N.D.Ala., affirmed, 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145. They may serve as an aid to proper school administration. A similar transfer plan was approved by this Court in Kelley v. Board of Education of City of Nashville, 270 F.2d 209, C.A.6, cert. denied, 361 U.S. 924, 80 S.Ct. 293, 4 L.Ed.2d 240. We adhere to our former ruling with the admonition to the board that it cannot use this as a means to perpetuate segregation. In Boson v. Rippy, supra, the court said, 285 F.2d at p. 46, the transfer feature "should be stricken because its provisions recognize race as an absolute ground for the transfer of students, and its application *might* tend to perpetuate racial discrimination." (Emphasis added.) This transfer provision functions only on request and rests with the students or their parents and not with the board. The trial judge retains jurisdiction during the transition period and the supervision of this phase of the reorganization may be safely left in his hands.

■ Some of the named plaintiffs seek orders restraining the defendants from refusing them admission to certain white schools. The district judge denied the requests for such orders. The questions presented by this phase of the case are moot as to some of the plaintiffs for the reason that they have now graduated from high school. When the defendants have complied with the mandate of this Court to submit an accelerated plan, looking to the reorganization of the Knoxville schools on a racially nondiscriminatory basis, the questions of individual admission to so-called "white" schools may be moot as to some of the other plaintiffs now in elementary schools.

■ Judge Taylor wisely withheld approval of the plan insofar as it denied Negro students the right to take the technical and vocational courses offered at Fulton High School. The board should, as he suggested, present within a reasonable time a plan that would permit all Negro students who desire and are qualified to have an opportunity to take the special courses of this high school.

As previously indicated, we think the Supreme Court contemplated that there would have to be plans for the transition and that some individual rights would have to be subordinated for the good of many. The smooth working of a plan could be thwarted by a multiplicity of suits by individuals seeking admission to grades not yet reached in the desegregation plan.

■ We think Judge Taylor was correct in denying injunctive relief and as he so eloquently said: "Some individuals, parties to this case, will not themselves benefit from the transition. At a turning point in history some, by the accidents of fate, move on to the new order. Others, by the same fate, may not. If the transition is made successfully, these plaintiffs will have had a part. Moses saw the land of Judah from Mount Pisgah, though he himself was never to set foot there."

In conclusion, we affirm the judgment of the District Court in the following respects: the approval of the plan insofar as it pertains to school grades already integrated; the approval of the plan as to items three and four thereof, providing for zoning or districting based upon location and capacity of school buildings and the permission of students to attend schools designated for their zones; the approval of the plan as to transfers subject to it being used for proper school administration purposes and not for perpetuation of segregation; the rejection of the plan so far as it pertains to Fulton High School and the order to the board to resubmit a plan in a reasonable time that will permit Negro students to have

the advantage of the special courses of that high school and the denial of injunctive relief.

We modify the judgment of the District Court insofar as it approved the board's plan for continued segregation of all grades not reached by its grade-a-year plan. It is not the function of this Court to formulate or dictate to the board a plan for the operation of the Knoxville schools. It is, likewise, not our intention to require immediate total desegregation. We do believe, however, that more grades than contemplated by the board's plan should now be desegregated. In the light of the board's experience with the present plan, it should be enabled to submit an amended plan that will accelerate desegregation and more nearly comply with the mandate of the Supreme Court for "good faith compliance at the earliest practicable date."

The case is remanded to the District Court with instructions to require the board to promptly submit an amended and realistic plan for the acceleration of desegregation, in accordance with the views herein expressed.