## GOSS ET AL. *v.* BOARD OF EDUCATION OF KNOXVILLE, TENNESSEE, ET AL.

No. 217.   Argued March 20–21, 1963.—Decided June 3, 1963.

*Jack Greenberg* argued the cause for petitioners.   With him on the briefs were *Constance Baker Motley, James M. Nabrit III, Carl A. Cowan, Z. Alexander Looby* and *Avon N. Williams.*

*K. Harlan Dodson, Jr.* and *S. Frank Fowler* argued the cause and filed briefs for respondents.

*Assistant Attorney General Marshall* argued the cause for the United States, as *amicus curiae,* urging reversal. With him on the brief were *Solicitor General Cox, Bruce J. Terris, Harold H. Greene* and *Howard A. Glickstein.*

*Jack Petree* argued the cause for the Board of Educa-
tion of the Memphis City Schools, as *amicus curiae,* urg-
ing affirmance. With him on the brief was *Harry C.
Pierotti.*

*Raymond B. Witt, Jr.* filed a brief for the Chattanooga
Board of Education, as *amicus curiae,* urging affirmance.

Mr. Justice Clark delivered the opinion of the Court.

We granted certiorari (371 U. S. 811) limited to the
question whether petitioners, Negro school children seek-
ing desegregation of the public school systems of Knox-
ville, Tennessee (the *Goss* case), and Davidson County,
Tennessee, an area adjacent to Nashville (the *Maxwell*
case), are deprived of rights under the Fourteenth
Amendment. The question centers around substantially
similar transfer provisions incorporated in formal de-
segregation plans adopted by the respective local school
boards pursuant to court orders. The claim is that the
transfer programs are invalid because they are based
solely on race and tend to perpetuate the pre-existing
racially segregated school system. Under the over-all
desegregation plans presented to the trial courts, school
districts would be rezoned without reference to race.
However, by the terms of the transfer provisions, a stu-
dent, upon request, would be permitted, solely on the
basis of his own race and the racial composition of the
school to which he has been assigned by virtue of rezon-
ing, to transfer from such school, where he would be in
the racial minority, back to his former segregated school
where his race would be in the majority. The appro-
priate District Courts and the Court of Appeals approved
the transfer plans. 301 F. 2d 164, 301 F. 2d 828. The
transfer plans being based solely on racial factors which,
under their terms, inevitably lead toward segregation of
the students by race, we conclude that they run counter

to the admonition of *Brown* v. *Board of Education,* 349 U: S. 294, 301 (1955), wherein the District Courts were directed to "consider the adequacy of any plans" proposed by school authorities "to effectuate a . . . racially nondiscriminatory school system." Our conclusion here leads to a reversal of the judgments of the Court of Appeals to the extent they approve the transfer provisions of respondent boards in each of the cases. The only question with which we are here concerned relates solely to the transfer provisions, and we are not called upon either to discuss or to pass on the other provisions of the desegregation plans.[1]

## I.

These cases were brought by Negro public school pupils and their parents as class actions against the respective school authorities. They challenged, among other points in the desegregation plans not here relevant, the transfer provisions which permitted a pupil to transfer, upon request, from the zone of his residence to another school. The transfer plans are essentially the same, each containing, in addition to the provisions at issue here, general provisions providing for transfers on a showing of "good cause."[2] The crucial provision, however, present in

---

[1] A full discussion of the Knoxville plans may be found in the opinion of the Court of Appeals, 301 F. 2d 164, which affirmed, with modifications not relevant here, the over-all plan, including the transfer provisions. Likewise the opinion of the Court of Appeals in *Maxwell* v. *County Board of Education of Davidson County,* 301 F. 2d 828, affirmed the action of the District Court in approving the Davidson County plan, including the transfer provisions which are set out in detail in that opinion.

[2] The Knoxville Plan provides (R. 31):

"5. Requests for transfer of students in desegregated grades from the school of their Zone to another school will be given full consideration and will be granted when made in writing by parents or guardians or those acting in the position of parents, when good cause

somewhat the same form in each plan, is exemplified by § 6 of the Knoxville plan:

"6. The following will be regarded as some of the valid conditions to support requests for transfer:

"a. When a white student would otherwise be required to attend a school previously serving colored students only;

"b. When a colored student would otherwise be required to attend a school previously serving white students only;

"c. When a student would otherwise be required to attend a school where the majority of students of that school or in his or her grade are of a different race."

This provision is attacked as providing racial factors as valid conditions to support transfers which by design and operation would perpetuate racial segregation. It is also said that no showing is made that the transfer provisions are essential to effectuation of desegregation and that other procedures are available.

## II.

It is readily apparent that the transfer system proposed lends itself to perpetuation of segregation. Indeed, the provisions can work only toward that end. While transfers are available to those who choose to attend

---

therefor is shown and when transfer is practicable, consistent with sound school administration."

.The Davidson County Plan provides (R. 214):

"4. Application for transfer of first grade students, and subsequent grades according to the gradual plan, from the school of their zone to another school will be given careful consideration and will be granted when made in writing by parents, guardians, or those acting in the position of parents, when good cause therefor is shown and when transfer is practicable and consistent with sound school administration."

school where their race is in the majority, there is no provision whereby a student might transfer upon request to a school in which his race is in a minority, unless he qualifies for a "good cause" transfer. As the Superintendent of Davidson County's schools agreed, the effect of the racial transfer plan was "to permit a child [or his parents] to choose segregation outside of his zone but not to choose integration outside of his zone." Here the right of transfer, which operates solely on the basis of a racial classification, is a one-way ticket leading to but one destination, *i. e.,* the majority race of the transferee and continued segregation. This Court has decided that state-imposed separation in public schools is inherently unequal and results in discrimination in violation of the Fourteenth Amendment. *Brown* v. *Board of Education,* 347 U. S. 483 (1954). Our task then is to decide whether these transfer provisions are likewise unconstitutional. In doing so, we note that if the transfer provisions were made available to all students regardless of their race and regardless as well of the racial composition of the school to which he requested transfer we would have an entirely different case. Pupils could then at their option (or that of their parents) choose, entirely free of any imposed racial considerations, to remain in the school of their zone or to transfer to another.

## III.

Classifications based on race for purposes of transfers between public schools, as here, violate the Equal Protection Clause of the Fourteenth Amendment. As the Court said in *Steele* v. *Louisville & Nashville R. Co.,* 323 U. S. 192, 203 (1944), racial classifications are "obviously irrelevant and invidious." The cases of this Court reflect a variety of instances in which racial classifications have been held to be invalid, *e. g.,* public parks and playgrounds, *Watson* v. *City of Memphis, ante,* p. 526 (1963); tres-

pass convictions, where local segregation ordinances preempt private choice, *Peterson* v. *City of Greenville, ante,* p. 244 (1963); seating in courtrooms, *Johnson* v. *Virginia, ante,* p. 61 (1963); restaurants in public buildings, *Burton* v. *Wilmington Parking Authority,* 365 U. S. 715 (1961); bus terminals, *Boynton* v. *Virginia,* 364 U. S. 454 (1960); public schools, *Brown* v. *Board of Education, supra;* railroad dining-car facilities, *Henderson* v. *United States,* 339 U. S. 816 (1950); state enforcement of restrictive covenants based on race, *Shelley* v. *Kraemer,* 334 U. S. 1 (1948); labor unions acting as statutory representatives of a craft, *Steele* v. *Louisville & Nashville R. Co., supra;* voting, *Smith* v. *Allwright,* 321 U. S. 649 (1944); and juries, *Strauder* v. *West Virginia,* 100 U. S. 303 (1879). The recognition of race as an absolute criterion for granting transfers which operate only in the direction of schools in which the transferee's race is in the majority is no less unconstitutional than its use for original admission or subsequent assignment to public schools. See *Boson* v. *Rippy,* 285 F. 2d 43 (C. A. 5th Cir.).

The alleged equality—which we view as only superficial—of enabling each race to transfer from a desegregated to a segregated school does not save the plans. Like arguments were made without success in *Brown, supra,* in support of the separate but equal educational program. Not only is race the factor upon which the transfer plans operate, but also the plans lack a provision whereby a student might with equal facility transfer from a segregated to a desegregated school. The obvious one-way operation of these two factors in combination underscores the purely racial character and purpose of the transfer provisions. We hold that the transfer plans promote discrimination and are therefore invalid.

This is not to say that appropriate transfer provisions, upon the parents' request, consistent with sound school administration and not based upon any state-imposed

racial conditions, would fall. Likewise, we would have a different case here if the transfer provisions were unrestricted, allowing transfers to or from any school regardless of the race of the majority therein. But no official transfer plan or provision of which racial segregation is the inevitable consequence may stand under the Fourteenth Amendment.

In reaching this result we are not unmindful of the deep-rooted problems involved. Indeed, it was consideration for the multifarious local difficulties and "variety of obstacles" which might arise in this transition that led this Court eight years ago to frame its mandate in *Brown* in such language as "good faith compliance at the earliest practicable date" and "all deliberate speed." *Brown* v. *Board of Education*, 349 U. S., at 300, 301. Now, however, eight years after this decree was rendered and over nine years after the first *Brown* decision, the context in which we must interpret and apply this language to plans for desegregation has been significantly altered. Compare *Watson* v. *City of Memphis, supra*. The transfer provisions here cannot be deemed to be reasonably designed to meet legitimate local problems, and therefore do not meet the requirements of *Brown*. Accordingly, the decisions of the Court of Appeals, insofar as they approve the transfer provisions submitted by the boards of education of Knoxville, Tennessee, and Davidson County, Tennessee, are reversed and the cases are remanded to the Court of Appeals with directions to remand to the District Courts for further proceedings in accordance with this opinion.

*Reversed and remanded.*