321 F.2d 230
 Cecelia JACKSON, an infant by George F. Jackson, her father and next friend, Linda Woodruff, an infant by Edward M. Barksdale and Georgia W. Barksdale, her stepfather and mother and next friends, Owen C. Cardwell, Jr., an infant by Owen C. Cardwell, his father and next friend, and Brenda E. Hughes, an infant by Mabel Hughes, her mother and next friend, Appellants,
v.
The SCHOOL BOARD OF the CITY OF LYNCHBURG, VIRGINIA, M. L. Carper, Superintendent of Schools of the City of Lynchburg, Virginia, and E. J. Oglesby, Alfred L. Wingo and Edward T. Justis, individually and constituting the Pupil Placement Board of the Commonwealth of Virginia, Appellees.
 No. 8722.
 United States Court of Appeals Fourth Circuit.
 Argued September 25, 1962.
 Decided June 29, 1963.
 
 James M. Nabrit, III, New York City (Jack Greenberg, Michael Meltsner, Leroy D. Clark, New York City, and Reuben E. Lawson, Roanoke, Va., on brief), for appellants.
 S. Bolling Hobbs, Lynchburg, Va. (Caskie, Frost, Davidson & Watts, and C. Shepherd Nowlin, City Atty. of Lynchburg, Va., on brief), for appellees.
 Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.
 SOBELOFF, Chief Judge.
 A group of Negro children and parents, residing in Lynchburg, Virginia, are the appellants here. Their appeal is from an order, passed on April 10, 1962, in the United States District Court for the Western District of Virginia, approving a desegregation plan presented by the school board of that city. Plaintiff-appellants present a number of objections to the plan. Argument in this court was heard September 25, 1962, and a per curiam opinion was filed three days later disposing of a single issue affecting two of the plaintiffs. 308 F.2d 918. The remaining issues were reserved pending disposition by the Supreme Court of the application for certiorari in Dillard v. The School Board of the City of Charlottesville, 308 F.2d 920 (1962). Certiorari was denied on June 17, 1963, 373 U.S. 827, 83 S.Ct. 1864, 10 L.Ed.2d 1051. However, the questions involved in Dillard were decided by the Supreme Court in Goss v. Board of Education of the City of Knoxville on June 3, 1963, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632.
 The first major objection the plaintiffs level against the plan proposed by the school board and accepted by the District Court concerns the racial minority transfer provision. This provides for automatic transfer, upon request, of any child who is in a racial minority within "his school or class." Little need be added to what was said by this court in the Dillard case, and since then more authoritatively by the Supreme Court in Goss, where the unanimous Court through Mr. Justice Clark, declared:
 
 
 1
 "It is readily apparent that the transfer system proposed lends itself to perpetuation of segregation. Indeed, the provisions can work only toward that end." Id. 83 S.Ct. at 1408.
 
 
 2
 "Classifications based on race for purposes of transfers between public schools, as here, violate the Equal Protection Clause of the Fourteenth Amendment. * * * The recognition of race as an absolute criterion for granting transfers which operate only in the direction of schools in which the transferee's race is in the majority is no less unconstitutional than its use for original admission or subsequent assignment to public schools." Id. 83 S.Ct. at 1408.
 
 
 3
 "The transfer provisions here cannot be deemed to be reasonably designed to meet legitimate local problems, and therefore do not meet the requirements of Brown." Id. 83 S.Ct. at 1409.
 
 
 4
 The plaintiffs' second attack against the board's plan is that its time schedule is too slow and unduly protracts the process of desegregation. As written, the plan provides that after the first grade is desegregated, commencing September 1, 1962, "at least one additional grade shall be desegregated [annually]." (Emphasis added.) Pointing out that the definite requirement of this plan is no more than the desegregation of one grade a year, plaintiffs argue that there is no administrative justification for permitting the school board to extend the process for perhaps as long as twelve years. Plaintiffs complain that under this plan no child now in school (including the minor plaintiffs) will be individually benefited.
 
 
 5
 The overcrowded condition of the schools, defendants claim, is the true reason for the adoption of the gradual plan. They say that white schools are generally overcrowded, while Negro schools are generally slightly under capacity. Plaintiffs answer that the persistent practice of segregation is itself the cause of overcrowding in the white schools. The defendants have attempted to show no valid reason to justify the scheduled delay, despite the fact that "[t]he burden rests upon the defendants to establish that such time is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date." Brown v. Board of Education, 349 U.S. 294, 300, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955). See also Cooper v. Aaron, 358 U.S. 1, 7, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958).
 
 
 6
 Three Circuits, the Third,[1] Fifth[2] and Sixth[3] have invalidated "grade-a-year" plans. Two of the decisions, those of the Fifth and Sixth Circuits, were subsequent to the District Court's decree in this case and involved schools in the deep South. This is especially significant because the District Court, in approving the Lynchburg plan, expressly distinguished the Third Circuit case, which invalidated Delaware's grade-a-year plan, on the ground that the Delaware situation differed substantially from that in Lynchburg, Nashville, New Orleans and other places in the South. 203 F.Supp. 701, 704 (W.D.Va.1962). Shortly thereafter, the Fifth Circuit disapproved such a plan for New Orleans and the Sixth firmly rejected one for Knoxville, thus removing the underpinning of the District Court's approval of the Lynchburg plan.
 
 
 7
 In addition the Supreme Court, in a single voice, recently ordered immediate desegregation of recreational facilities in Memphis, Tennessee, and said:
 
 
 8
 "* * * [T]he second Brown decision, supra [349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955)], which contemplated the possible need of some limited delay in effecting total desegregation of public schools, must be considered * * * in light of the significant fact that the governing constitutional principles no longer bear the imprint of newly enunciated doctrine. * * * [W]e cannot ignore the passage of a substantial period of time since the original declaration of the manifest unconstitutionality of racial practices such as are here challenged, the repeated and numerous decisions giving notice of such illegality, and the many intervening opportunities heretofore available to attain the equality of treatment which the Fourteenth Amendment commands the States to achieve. These factors must inevitably and substantially temper the present import of such broad policy considerations as may have underlain, even in part, the form of decree ultimately framed in the Brown case. Given the extended time which has elapsed, it is far from clear that the mandate of the second Brown decision requiring that desegregation proceed with `all deliberate speed' would today be fully satisfied by types of plans or programs for desegregation of public educational facilities which eight years ago might have been deemed sufficient. Brown never contemplated that the concept of `deliberate speed' would countenance indefinite delay in elimination of racial barriers in schools * * *." Watson v. City of Memphis, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529.[4] (Emphasis added.)
 
 
 9
 Guided by these explicit pronouncements, we hold that the "grade-a-year" plan, promulgated by the Lynchburg School Board, for initial implementation eight years after the first Brown decision, cannot now be sustained.
 
 
 10
 Plaintiffs present other challenges to the plan, such as the failure to delineate proper zones, to spell out details with respect to assignments and deadlines, and to provide for notifying parents and children of their rights under the plan and how these rights may be vindicated. They further complain that the plan fails to provide for desegregation of faculty and staff, or the special classes for handicapped and gifted children, or adult education classes, or vocational and commercial education, or kindergarten and other pre-school as well as summer school programs. The evidence indicates that the defendants had no intention of encompassing these and related matters within their desegregation plan. The complaint prayed for an order compelling the board to "effect * * * a transition to a racially non-discriminatory school system"; and this prayer, we think, is broad enough to comprehend all aspects of the schools' operations.
 
 
 11
 Without undertaking to review the deficiencies of the plan which have been specifically called to the court's attention, and without limiting the District Judge to such phases, the case will be remanded for further consideration of the plan under the principles above discussed, and in light of the Supreme Court's most recent admonition that:
 
 
 12
 "Given the extended time which has elapsed, it is far from clear that the mandate of the second Brown decision requiring that desegregation proceed with `all deliberate speed' would today be fully satisfied by types of plans or programs for desegregation of public education facilities which eight years ago might have been deemed sufficient." Watson v. City of Memphis, 373 U.S. 683, 83 S.Ct. 1314, 10 L.Ed.2d 529.
 
 
 13
 It is not feasible for this court to undertake a detailed rewriting of the board's plan, but the District Court has the authority and the responsibility to perform the task comprehensively to bring the plan into full conformity with the law. Having regard for the delays which have already occurred, and the early advent of the 1963-1964 school year, the matter requires prompt attention.
 
 
 14
 Judge Soper was a member of the panel that heard the case on September 25, 1962, and participated in the opinion of September 28, 1962, but did not participate in the above opinion, having died on March 11, 1963.
 
 
 15
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 Evans v. Ennis, 281 F.2d 385 (3d Cir.), application for a stay denied, 364 U.S. 802, 81 S.Ct. 27, 5 L.Ed.2d 36 (1960), cert. denied, 364 U.S. 933, 81 S.Ct. 379, 5 L.Ed.2d 365 (1961)
 
 
 [2]
 Bush v. Orleans Parish School Board, 308 F.2d 491, 500, 501-502 (5th Cir. 1962)
 
 
 [3]
 Goss v. Board of Education of City of Knoxville, 301 F.2d 164, rev'd as to other grounds, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632. That Court of Appeals, in voiding the grade-a-year plan approved by the District Court, said:
 "It has been nearly eight years since the first Brown decision and under the plan before us the first and second grades are now integrated. The evidence does not indicate that the board is confronted with the type of administrative problems contemplated by the Supreme Court in the second Brown decision. * * *
 "* * * `The burden rests upon the defendants to establish that such time is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date.' In our judgment, the defendants have not sustained this burden. We do not think that the twelve-year plan of desegregation adopted at this late date meets either the spirit or specific requirements of the decisions of the Supreme Court." 301 F.2d at 167. (Emphasis added.)
 
 
 [4]
 Only one week after this utterance, the Court, in invalidating the Tennessee racial minority pupil transfer provisions, noted that:
 "* * * [I]t was consideration for the multifarious local difficulties and `variety of obstacles' which might arise in this transition [to total desegregation] that led this Court eight years ago to frame its mandate in Brown in such language as `good faith compliance at the earliest practicable date' and `all deliberate speed.' [Citation omitted.] Now, however, eight years after this decree was rendered and over nine years after the first Brown decision, the context in which we must interpret and apply this language to plans for desegregation has been significantly altered." Goss v. Board of Education of the City of Knoxville, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632.