346 F.2d 22
 Brenda Elaine BROWN, Pamela Brown, Sandra Brown, Cornell Jerome Brown, Julian Brown and Julia Brown, infants by Julian E. Brown, their father and next friend, and Julian E. Brown, Appellants,
v.
COUNTY SCHOOL BOARD OF FREDERICK COUNTY, VIRGINIA, Robert E. Aylor, Division Superintendent of Schools of Frederick County, Virginia, and E. J. Oglesby, Alfred L. Wingo and E. T. Justis, individually and constituting the Pupil Placement Board of the Commonwealth of Virginia, Appellees.
 No. 9825.
 United States Court of Appeals Fourth Circuit.
 Argued May 3, 1965.
 Decided May 24, 1965.
 
 S. W. Tucker, Richmond, Va. (Henry L. Marsh, III, Richmond, Va., and Otto L. Tucker, Alexandria, Va., on brief), for appellants.
 Joseph A. Massie, Jr., Winchester, Va., (Massie & Snarr, Winchester, Va., on brief), for appellees.
 Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges, sitting en banc.
 HAYNSWORTH, Chief Judge:
 
 
 1
 A little more than a year ago this school desegregation case was remanded to the District Court to consider the appropriateness of general injunctive relief.[1] The case had been dismissed after the named plaintiffs had been admitted to the schools of their choice, but it appeared that the School Board had been using a dual zoning system of assignments in the primary schools and had been sending all Negro high school pupils to a segregated school in Winchester.
 
 
 2
 Thereafter, the School Board adopted other resolutions and developed a plan which the Court, with some modifications, approved by a final order entered on November 18, 1964. The School Board's plan, as submitted to the Court, appeared to offer each pupil in the school system complete freedom of choice as to the school to be attended. The Court's approval of the plan was premised upon its finding that it did offer a freedom of choice as to assignments and transfers. Superficially, at least, it appeared to be the kind of a plan which this Court recently approved in the Richmond case.[2]
 
 
 3
 The plaintiffs appealed, contending, as the plaintiffs had in the Richmond case, that the allowance of free choice to Negro parents was a denial of the constitutional guaranty, the briefs in this case having been prepared and filed before the decision in the Richmond case was announced.
 
 
 4
 In its responsive brief in this case, however, the School Board printed an affidavit of the School Superintendent setting forth the plan under which the Board intends to operate for the school year commencing September 1965. The plan described there appears to be a departure from the plan heretofore approved by the District Court, though there are uncertainties as to just what the School Board has in mind and how it intends to operate.
 
 
 5
 On the face of the affidavit, the plan appears to be, in general, a geographic assignment plan, with restricted rights of transfer to all pupils, but with, so counsel indicated, unrestricted rights to Negro pupils seeking to attend a primary school heretofore attended solely by Negroes. There is a new junior high school and the plan for 1965 appears to provide that all pupils in the county school system of junior and high school age will attend one junior high school and one senior high school, respectively, operated by the Board. The problem we now face, therefore, appears to concern only the primary schools.
 
 
 6
 The School Board may use a strictly geographic scheme of assignments, but, if that is the Board's purpose, it may not use dual zones. Negroes throughout the county may not be assigned to Gibson School while assignments to the other elementary schools are upon a geographic basis, each school drawing from a compact area surrounding it. There is no justification for superimposing a county-wide Gibson zone upon an otherwise acceptable plan of neighborhood zones.
 
 
 7
 The School Board may, if it wishes, superimpose upon a geographic assignment system provision for free transfers, provided transfers are available upon a nondiscriminatory basis.[3]
 
 
 8
 Finally, the School Board may, if it wishes, operate under a plan of free assignments and free transfers.
 
 
 9
 These several alternatives open to the Board we discussed in the recent Richmond case, in which we approved a free choice plan, but this record's description of the plan proposed for 1965 makes its identity and classification highly uncertain. The plan as described in the affidavit is amorphous and incomplete. Counsel for the School Board was willing to undertake to answer some questions of the Court as to the operation of the plan by reference to specific local problems, but this Court cannot make a definitive determination of the plan's operation. Such a determination could only be made after the plan has been supplemented and clarified or after an evidentiary hearing.
 
 
 10
 Insofar as the proposed plan for 1965 suggests a geographic assignment plan with greater rights of transfer for Negro pupils than others are given, it may raise novel questions as to the application of the proscription against minority transfers when the complainants are those to whom the greater rights are given. If that question is present, however, it ought to be approached only after a record has been developed and the complete plan and its operation have been delineated. Initially, of course, such a question should have the consideration of the District Court before this Court undertakes its exposition.
 
 
 11
 Because of these considerations, it was suggested by counsel for both sides at the bar of this Court that a remand seemed appropriate. We agree, for the School Superintendent's plan tendered by the School Board does suggest a departure from the plan heretofore approved by the District Court. Further proceedings will be required in the District Court to determine what the School Board's intention is and how it will be implemented.
 
 
 12
 We are told that the School Board proposes to make all assignments for the next school year by June 2, 1965. As soon thereafter as practicable, a hearing should be held in the District Court for the purpose of a determination by that Court of the detailed provisions of the School Board's plan as operated and applied by the School Board in making assignments for the next school year. The District Court will then be in a position to determine whether the plan in operation is discriminatory or whether it meets the constitutional requirements.
 
 
 13
 Remanded.
 
 
 
 Notes:
 
 
 [1]
 Brown v. County School Board of Frederick County, Virginia, 4 Cir., 327 F.2d 655
 
 
 [2]
 Bradley v. School Board of the City of Richmond, Virginia, 4 Cir., 345 F.2d 310. Whether or not the School Board's plan, as understood by the District Court, met the standards of the Bradley case, we do not now determine. It suffices to say that it was understood by the District Court to be a "freedom of choice" plan, dependent for its validity upon the Bradley principle
 
 
 [3]
 Goss v. Board of Education of Knoxville, Tennessee, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632; Dillard v. School Board of City of Charlottesville, 4 Cir., 308 F.2d 920