Birdie Mae **DAVIS** et al., Appellants-Cross Appellees,

United States of America et al., Appellants-Cross Appellees,

v.

**BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY** et al., Appellees-Cross Appellants.

Nos. 26886, 27491, 27260.

United States Court of Appeals Fifth Circuit.

June 3, 1969.

Rehearing Denied June 20, 1969.

Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., Stephen J. Pollak, Asst. Atty. Gen., Jerris Leonard, Asst. Attys. Gen., Frank M. Dunbaugh, Walter Gorman, David Bonderman, Attys., Dept. of Justice, Washington, D. C., David L. Norman, Deputy Asst. Atty. Gen., for appellants.

Jack Greenberg, Norman Amaker, Michael Davidson, New York City, Vernon Z. Crawford, Frankie Fields, Mobile, Ala., for appellants Birdie Mae Davis et al.

Abram L. Philips, Jr., Pierre Pelham, Palmer Pillans, George F. Wood, James D. Brooks, Mobile, Ala., for appellees.

Before JOHN R. BROWN, Chief Judge, DYER, Circuit Judge, and HUNTER, District Judge.

PER CURIAM:

In No. 26,886 the District Court on July 29, 1968, entered an order formulating attendance zone lines for grades 1–8 in the city portion of the Mobile School System, adopted freedom of choice in the high school system, permitted transfer from a school into which a student was zoned if the student was in a racial minority of less than five percent, and continued a freedom of choice plan in the rural areas.

In Nos. 27,260 and 27,491 the District Court on December 20, 1968, and March 14, 1969, approved construction plans for the Howard and Toulminville schools respectively.

We consolidated and expedited these appeals for oral argument.

It is apparent that the District Court relied wholly upon and gave literal interpretation to the directive in our decision of March 12, 1968, 5 Cir., 393 F.2d 690, that new attendance zones be drawn on a non-racial basis and ignored the unequivocal directive to make a conscious effort in locating attendance zones to desegregate and eliminate past segregation. The record shows and the statistics prove that the attendance zones formulated by the District Court are constitutionally insufficient and unacceptable, and such zones must be redrawn.

In approving a freedom of choice plan for high school students the District Court failed to follow the mandate in our opinion that no distinction was to be drawn between elementary and high school students with respect to attendance zones, and that the same principles were to govern the assignment of students to secondary as to primary schools.

■ A provision permitting transfers from racial majority to racial minority schools is entirely proper and should be included in a plan.

■ The converse, transfers from racial minority to racial majority schools, permitted by the District Court, even when restricted to those instances when the racial minority is 5% or less, is erroneous. This is tantamount to an authorization to white students to resegregate and is impermissible as a means for the perpetuation of segregation. Monroe v. Board of Commissioners, 1968, 391 U.S. 450, 88 S.Ct. 1700, 20 L. Ed.2d 733; Goss v. Board of Education, 1963, 373 U.S. 683, 83 S.Ct. 1405, 10 L. Ed.2d 632.

■ The freedom of choice plan for the rural schools approved by the District Court has singularly failed. Only about 6% of the rural Negro school population in Mobile County chose to attend traditionally white schools and no white children chose to attend traditionally Negro schools. Green v. County School Board, 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716, makes it clear that freedom of choice was an impermissible desegregation plan here.

■ With respect to the construction of new facilities in the Howard and Toulminville sites, whether these schools should be built as presently proposed, abandoned, or the location changed will largely depend on what the student demands will be after new attendance zones are established to eliminate past segregation. Until new attendance zones are formulated in accordance with this order, the order of this court enjoining the construction of the Howard school and the Toulminville project will be continued in effect.

Actually, the formulation of appropriate decrees in the cases before the Court present few, if any, justiciable issues of constitutional import. Such issues have been largely resolved. The difficulties involved in developing a proper decree concern basically practical operational questions and matters of educational administration. H.E.W., with its staff of trained educational experts "with their day to day experience with thousands of school systems", is far better qualified to deal with such operational and administrative problems than the Courts presided over by Judges, who, as one Court has phrased it, "do not have sufficient competence—they are not educators or school administrators—to know the right questions, much less the right answers." United States v. Jefferson County Board of Education, 5th Cir.1966, 372 F.2d 836, 855; * * *.

Whittenberg v. Greenville County School District, etc. (D.S.C. March 31, 1969), 298 F.Supp. 784, 789, 790.

The orders of the District Court are reversed and the cases are remanded to the District Court with the following instructions:

1. This case shall receive the highest priority.

2. The District Court shall forthwith request the Office of Education of the United States Department of Health,

Education and Welfare to collaborate with the Board of School Commissioners of Mobile County in the preparation of a plan to fully and affirmatively desegregate all public schools in Mobile County, urban and rural, together with comprehensive recommendations for locating and designing new schools, and expanding and consolidating existing schools to assist in eradicating past discrimination and effecting desegregation. The District Court shall further require the School Board to make available to the Office of Education or its designees all requested information relating to the operation of the school district.

3. Proceed according to an expedited time schedule for the submission, review and approval of the plan, as follows:

(a) The board shall within 30 days of this order develop, in conjunction with the experts of the Office of Health, Education and Welfare, an acceptable plan of operation, conformable to the constitutional rights of the Negro students as we have delineated in this opinion.

(b) If such plan is agreed upon by the school board and the Office of Education within the time fixed, the Court will approve such plan, unless the plaintiffs within ten days make proper showing that the plan does not meet constitutional standards.

(c) If no such agreed plan is developed within 30 days, the Office of Education is requested to submit within 10 days its recommendation of a plan for the school district.

(d) The parties shall have ten days from the date a plan is filed with the District Court to file objections or suggested amendments thereto.

(e) For plans as to which *objections* are made or amendments suggested, or which in any event the District Court will not approve without hearing, the District Court shall commence hearings beginning no later than ten days after the time for filing objections has expired.

(f) A new plan for the district effective for the beginning of the 1969–70 school term shall be completed and approved by the District Court no later than August 1, 1969.

(g) The recommendations as to new construction shall be submitted to the District Court within 120 days of this order.

Because of the urgency of formulating and approving plans to be effective for the 1969–70 school term it is ordered as follows: The mandate of this court shall issue immediately and will not be stayed pending petitions for rehearing or certiorari. This court will not extend the time for filing petitions for rehearing or briefs in support of or in opposition thereto. Any appeals from orders or decrees of the District Court on remand shall be expedited. The record on appeal shall be lodged with this court and appellants' brief filed, all within ten days of the date of the order or decree of the district court from which the appeal is taken. Appellee's brief shall be due ten days thereafter. The court will determine the time and place for oral argument if allowed.

Reversed and remanded with directions.

HUNTER, District Judge (concurring):

In my judgment "non racial zoning" coupled with a majority to minority transfer provision would best serve the interests of all the school children in metropolitan Mobile. However, this court in its opinion of March 12, 1968, added a *caveat* to its instructions that attendance zones be based on objective criteria (393 F.2d at 694):

"* * * conscious effort should be made to move boundary lines and change feeder patterns which tend to preserve segregation."

This is the law of the case and is consistent with recent decisions of the Fifth Circuit. United States v. Greenwood Municipal Separate District, 406 F.2d 1086 (5 Cir. Feb. 1969).

Students in the rural portion of the system have been assigned to schools on the basis of freedom of choice. In 29 consolidated cases involving factual settings very similar, I have held that Jefferson-type freedom of choice in Louisiana School Districts "had real prospects of dismantling the dual system at the earliest practicable date" and that this was the best method available to do the job. Conley v. Lake Charles Sch. Bd., W.D.La.1968, 293 F.Supp. 84. These cases have been reversed. Hall et al. v. St. Helena Parish School Board, Nos. 26450 and 27303, May 28, 1969. There can be no doubt that Hall, supra, requires a holding here that as now constituted, administered and operating in the Mobile Public School System, freedom of choice is not effectual.

ON PETITION FOR REHEARING

PER CURIAM:

It is ordered that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied, and the motion of appellees for a stay of execution and enforcement of the judgment is denied.

HUNTER, District Judge:

Under the total circumstances I would grant the petition for rehearing.