Reverend Francis X. LAWLOR et al.,
Plaintiffs-Appellants,

v.

BOARD OF EDUCATION OF the CITY OF CHICAGO et al., Defendants-Appellees.

No. 71–1207.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 8, 1971.

Decided April 10, 1972.

Richard S. Kuhlman, George C. Pontikes, Michael Hawkins, Chicago, Ill., for plaintiffs-appellants.

James W. Coffey, John T. Mehigan, Board of Education, Chicago, Ill., for defendants-appellees.

Before HASTINGS, Senior Circuit Judge, KILEY and KERNER,[1] Circuit Judges.

KILEY, Circuit Judge.

This is an unusual civil rights racial segregation action brought under 42 U. S.C. § 1983 [2] by several persons claiming

---

1. Judge Kerner heard oral argument but did not participate in the adoption of this opinion.

2. § 1983 Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or

denial of constitutional rights by defendant School Board's administrative actions which allegedly have "forced"[3] "white" residents to move out of, and encouraged the segregation of "black people" within, the O'Toole Elementary School area[4] and its schools. The district court dismissed plaintiffs' second amended complaint. Plaintiffs have appealed. We affirm.

The complaint alleges in substance[5] that prior to 1967 the O'Toole area was a "white residential area" with only "a few if any black persons; " that as a result of certain "practices and policies" of the Board the number of black students in the area schools has risen to well over 10–25%; that this rapid influx of blacks has caused or is causing whites to be "forced" and "driven" out of their schools, homes and businesses; and that the area schools have become or are becoming segregated.

The Board "practices and policies" complained of include the following: 1) boundary changes in attendance areas; 2) reclassification of general attendance to special purpose schools (*i. e.*, technical); 3) construction of temporary facilities to cure overcrowding; 4) a system of "permissive transfers" whereby students from throughout the city can transfer to "receiving schools" within the O'Toole area.

Plaintiffs seek a judicial declaration that they have been denied due process and equal protection of law by defendant's alleged invidious administrative "practices and policies." They also seek an injunction which would limit to a range of 10–25% the number of black students in the O'Toole area schools.

We hold that the district court did not err in dismissing the complaint since the allegations taken as true do not show a "deprivation of constitutional rights" necessary to sustain plaintiffs' complaint. Ehrlich v. Van Epps, 428 F. 2d 363, 364 (7th Cir. 1970); Sarelas v. Sheehan, 326 F.2d 490, 491 (7th Cir. 1963); Kamsler v. M.F.I. Corp., 359 F. 2d 752 (7th Cir. 1966).

Plaintiffs essentially allege that the Board's "invidious" conduct has increased the number of black residents in the O'Toole School area, "forcing" white residents out and inducing blacks to enter; and increased the number of students in the school beyond the range of 10–25%, "forcing" white students out. The inevitable result of the alleged unlawful conduct, plaintiffs charge, has been to segregate a previously integrated community. This inevitable result, they say, should have been foreseen by the Board.

But a fair reading of the complaint, with the allegations taken as true, clearly does not state a denial of plaintiffs' constitutional rights upon which civil rights relief can be granted. General allegations of the Board's misconduct are limited by other statements and assertions which refute the claims of constitutional misconduct. It is plain from the complaint that the O'Toole School attendance boundaries were not purposefully drawn to "force" whites out or induce blacks to enter. There is no intimation that the operation of the permissive transfer policy discriminated against whites or blacks, or that the construction policies denied equal protection to either race. And plainly there is

---

usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. "Forced" is used in the sense that "white people" move out because of the increase of "black people" moving in.

4. We are referring to that area and its schols bounded by 59th Street on the north, Western Avenue on the west, 69th Street on' the south and Ashland Avenue on the east. For convenience we refer only to the O'Toole Elementary School, but the complaint also names other schools bounded by 59th Street on the

5. Many of the allegations are in most general and conclusory terms. Many others are irrelevant. However, we need not, in view of our decision hereinafter, dwell upon infirmities in the pleading.

no basis for an inference that plaintiffs have been deprived of any liberty or property without due process.

■ Furthermore, the declaration sought with respect to limiting "black students" to a 10–25% range within the O'Toole area schools would deny equal protection of the law to the black people desiring to move into the area and to their children desiring to attend the O'Toole School. And there is no substantive constitutional right to any particular degree of racial balance or mixing. Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 24, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). Finally, assuming defendants are deliberately applying the alleged "practices and policies," we see no justification—absent a substantial showing of denial of plaintiffs' rights—for a declaration that the policies are invidiously discriminatory, or for the injunctive relief sought.

The complaint effectually states that racial imbalance results when other whites leave the neighborhood area and its schools, in response to attendance of black students exceeding a range of 10–25%. But the Board policy of permitting black student attendance in excess of 10–25% at the racially changing schools is shown by the complaint not to be the legally sufficient cause of subsequent racial imbalance, since the complaint states that whites move away from the area because blacks move in. And plaintiffs have not shown their standing to complain of deprivation of rights from racial imbalance in schools, resulting solely from departure of other whites, in response to an influx of blacks.

■ If separation in racially imbalanced schools were the result of unlawful discrimination, school officials would be under an affirmative duty to remedy the situation. However, the mere fact of imbalance of races is not alone a deprivation of equality of educational opportunity in the absence of purposeful invidious discrimination. Deal v. Cincinnati Board of Education, 369 F.2d 55, 62 (6th Cir. 1966), cert. den. 389 U.S. 847, 88 S.Ct. 39, 19 L.Ed.2d 114; Springfield School Comm. v. Barksdale, 348 F.2d 261, 264 (1st Cir. 1965); Downs v. Board of Education of Kansas City, 336 F.2d 988 (10th Cir. 1964), cert. den. 380 U.S. 914, 85 S.Ct. 898, 13 L.Ed.2d 800; Bell v. School, City of Gary, 324 F.2d 209 (7th Cir. 1963), cert. den. 377 U.S. 924, 84 S.Ct. 1223, 12 L. Ed.2d 216. See also Offermann v. Nitkowski, 378 F.2d 22, 24 (2nd Cir. 1967).

In all cases cited by plaintiffs, denials of constitutional rights are involved. For example, in Monroe v. Pape, 365 U. S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the complaint alleged the invasion and search of the Monroe home by police without a warrant. In Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed. 110 (1960), relief was granted because certain "boundary changes" would have deprived plaintiffs of their right to vote. In Goss v. Board of Education, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632 (1963), black students were limited to transferring to schools where their race represented a majority.

We hold that plaintiffs' complaint is fatally deficient for lack of a showing of denial of constitutional rights. There is no basis therefore for the contention that defendants have an affirmative duty to "ameliorate all manifestations" of de facto segregation which has developed in the O'Toole area. Absent violation of plaintiffs' constitutional or other federal rights, plaintiffs have no basis for their claim of civil rights relief.

The recent decisions relied on by plaintiffs avail them nothing. In both Spangler v. Pasadena City Board of Education, 311 F.Supp. 501 (C.D.Cal. 1970), and Bradley v. Milliken et al., 338 F.Supp. 582, U.S.D.C., there was evidence of discriminatory practices and policies which impinged on plaintiffs' ("black students") constitutional rights to equal school facilities and educational equality.

Affirmed.