**CONLEY et al.**

v.

**LAKE CHARLES SCHOOL BOARD and Calcasieu Parish School Board (and 29 related cases).**

Civ. A. Nos. 9981, 10687, 10902, 10903, 10912, 10946, 11053, 11054, 11055, 11125, 11126, 11130, 11297, 11304, 11314, 11329, 11351, 11501, 11577, 11908, 12071, 12169, 12171, 12177, 12265, 12589, 12721, 12722, 12880, 12924.

United States District Court
W. D. Louisiana.
Nov. 14, 1968.

Jesse H. Queen, Edward S. Christenberry, Dept. of Justice, Civil Rights Div., Washington, D. C., Collins, Douglas & Elie, A. P. Tureaud, New Orleans, La., William Bennett Turner, New York City, Louis Berry, Alexandria, La., Murphy W. Bell, Baton Rouge, La., Marion Overton White, Opelousas, La., for plaintiffs.

Jack P. F. Gremillion, Atty. Gen., State of Louisiana, Baton Rouge, La., Bernard N. Marcantel, Dist. Atty., Jefferson Davis Parish, Jennings, La., John A. Richardson, Dist. Atty., Caddo Parish, Shreveport, La., Louis H. Padgett, Jr., Dist. Atty., Bossier Parish, Bossier City, La., J. Y. Fontenot, Dist. Atty., St. Landry Parish, Opelousas, La., Harry Kron, Thibodeaux, La., Edwin O. Ware, Dist. Atty., Rapides Parish, Alexandria, La., John F. Ward, Jr., Baton Rouge, La., Bertrand DeBlanc, Dist. Atty., Lafayette Parish, Lafayette, La., L. O. Fusilier, Dist. Atty., Evangeline Parish, Ville Platte, La., Knowles M. Tucker, Dist. Atty., Iberia, St. Mary and St. Martin Parishes, New Iberia, La., Henry L. Yelverton, Asst. Dist. Atty., Calcasieu Parish, Lake Charles, La., Holloway &

Baker, Jonesboro, La., Fred L. Jackson, Asst. Dist. Atty., Claiborne Parish, Homer, La., Thompson L. Clarke, Dist. Atty., Sixth Judicial District, St. Joseph, La., William B. Ragland, Jr., Asst. Dist. Atty., Sixth Judicial District, Lake Providence, La., Ragan D. Madden, Dist. Atty., Third Judicial District, Ruston, La., Sam L. Wells, Dist. Atty., Eighth Judicial District, Colfax, La., Thomas A. Self, Asst. Dist. Atty., 11th Judicial District, Many, La., Charles A. Riddle, Jr., Dist. Atty., 12th Judicial District, Marksville, La., Kermit M. Simmons, Winnfield, La., Albin P. Lassiter, Dist. Atty., Ouachita Parish, Monroe, La., Nolan J. Edwards, Asst. Dist. Atty., Arcadia Parish, Crowley, La., J. Bennett Johnston, Jr., Shreveport, La., Hal R. Henderson, Dist. Atty., Second Judicial District, Arcadia, La., W. C. Falkenheiner, Dist. Atty., Seventh Judicial District, Vidalia, La., E. Rudolph McIntyre, Dist. Atty., Fifth Judicial District, Winnsboro, La., for defendants.

Before DAWKINS, Chief Judge, and HUNTER and PUTNAM, JJ.

PER CURIAM:

In the summer of 1967 we entered decrees in exact conformity with the model decree as set forth just shortly before by the Fifth Circuit in *Jefferson*.[1]

The question for decision is whether under all the circumstances here present the "freedom of Choice plans," which defendant school boards were compelled, under court order, to put into effect in the fall of 1967, constitute adequate compliance with the Board's responsibility "to achieve a system of determining admission to the public schools on a non-racial basis * * *." Brown v. Board of Education of Topeka, Shawnee County, Kan., 349 U.S. 294, 300–301, 75 S.Ct. 753, 99 L.Ed. 1083 (Brown II).

Specifically, we are ordered by the United States Court of Appeals (Adams et al v. Mathews et al 5 Cir., 403 F.2d 181, August 26, 1968) to make findings as to whether these plans are adequate to convert the dual system to a unitary system in which racial discrimination would be eliminated root and branch. In making this determination our duty has been set forth by the Supreme Court of the United States in the recent case of Green et al. v. County School Board of New Kent County, Virginia et al., 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716:

"The obligation of the district courts, as it always has been, is to assess the effectiveness of a proposed plan in achieving desegregation. There is no universal answer to complex problems of desegregation; there is obviously no one plan that will do the job in every case. The matter must be assessed in light of the circumstances present and the options available in each instance. It is incumbent upon the school board to establish that its proposed plan promises meaningful and immediate progress toward disestablishing state-imposed segregation. It is incumbent upon the district court to weigh that claim in light of the facts at hand and in light of any alternatives which may be shown as feasible and more promising in their effectiveness. Where the court finds the board to be acting in good faith and the proposed plan to have real prospects for dismantling the state-imposed dual system 'at the earliest practicable date,' then the plan may be said to provide effective relief. Of course, where other, more promising courses of action are open to the board, that may indicate a lack of good faith; and at the least it places a heavy burden upon the board to explain its preference for an appar-

1. United States v. Jefferson County Board of Education (5th Cir., 1966), 372 F.2d 836, aff'd on re-hearing en banc, 5th Cir., 1967, 380 F.2d 385, cert. denied, Caddo

Parish School Bd. v. United States, 1967, 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103.

ently less effective method. Moreover, whatever plan is adopted will require evaluation in practice, and the court should retain jurisdiction until it is clear that state-imposed segregation has been completely removed. See Raney v. Board of Education of Gould School District, 391 U.S. 443, at 449, 88 S.Ct. 1697, at 1700, 20 L.Ed.2d 727.

"We do not hold that 'freedom of choice' can have no place in such a plan. We do not hold that a 'freedom-of-choice' plan might of itself be unconstitutional, although that argument has been urged upon us. Rather, all we decide today is that in desegregating a dual system a plan utilizing 'freedom of choice' is not an end in itself."

It must be emphasized at the outset that there is no proposed plan by the school boards. They now operate under a circuit-wide uniform decree. They have been admonished indirectly (no later than June 3, 1968) not to tinker with this model decree. United States et al v. Board of Education of Bessemer et al, 396 F.2d 44 (5th Cir., June 3, 1968). However, it has now been spelled out that if the specifics of *Jefferson* do not have real prospects of dismantling the dual system of schools at the earliest practicable date, then the school boards must formulate a new plan, and in light of other courses open to them, such as zoning, fashion steps to convert promptly to a system without a "white school" and a "Negro school," but just schools.

We find as a fact that:

1. The school boards are acting in good faith.

2. The Jefferson decree under which they have been operating since the fall of 1967 has real prospects for dismantling the dual system "at the earliest *practicable* date", especially in light of the substantial assignments of faculty members to schools of the opposite race, which naturally encourage students of both races to transfer.

3. The documentary evidence in each case speaks for itself and is incorporated herein by reference.

4. Most of the parish school systems involved operate on six 6-weeks periods each year. Sometimes the school year is referred to as having a "first semester" and a "second semester." This is a misnomer. For many years the school systems have operated on the basis of the "school year," wherein the courses run for some nine months, and the pupils, especially in elementary schools, remain with the same teacher in the same course for that length of time. There are only a few exceptions.

## CONCLUSIONS OF LAW

(1) Freedom of choice is a permissible means to a constitutionally required end—the complete abolition of segregation and its effects. If it proves effective, it is acceptable. If it fails to undo segregation, other means must be sought.

(2) The school boards and their officials have the continuing affirmative duty to take whatever courses which appear open to them to further eradicate race as a distinction in school facilities, student bodies, activities and faculties.

(3) The model decree includes provisions for faculty integration. The United States Court of Appeals for the Fifth Circuit (on June 3, 1968) has set "C-day" for full compliance with these provisions. Each school board's attention is specifically directed to the case of United States et al v. Board of Education of Bessemer et al, 396 F.2d 44, 5th Cir. 1968. Each school board must comply and is specially ordered to do so.

(4) This Court retains jurisdiction in each case.

(5) There may be other courses which might be open to a board or boards which will meaningfully assist "freedom of choice" in disestablishing the dual system. Each board should reassess its own system and on or before

March 1, 1969 make a report to this Court as to what additional courses are open to it to bring about the end result required by the Supreme Court in *Green.*

*Green* involved a school system with only two schools. There, it was held that under all the circumstances the freedom of choice plan was not working. Every plan, *Green* says, must finally check out in tests of practicality, promise and realism. *Green* does not burden any school system with a demand for action so traumatic that it tears out a school system root and branch at the same time the dual system is being eliminated. Considering conditions which existed for nearly a century following Emancipation, real progress has been made with *Jefferson* freedom of choice and its decree permitting such freedom (most recently approved in *Green*), if it is working. A sense of security and happiness on the part of a pupil is a tremendous asset in his learning process. Prior to *Jefferson* (1967), integration was practically nil. In 1967 the *Jefferson* decree was entered. Approximately 4,986 Negro students attended previously all-white schools as a result. In 1968 there are 7,550 attending. In 1967 there were approximately 300 teachers in schools of the opposite race. In 1968 there are approximately 1,000. The so-called "all white" schools are almost a thing of the past. We still have so-called "Negro schools" but almost all have white faculty members. It is our belief, based upon facts in these records, that the March 1st reports may reveal other courses open to bring about the ultimate result commanded in *Green.* Freedom of choice has certainly worked for the 7,550 pupils who were given the opportunity and did choose a school of the opposite race. This progress deserves praise. It is manifestly impossible for any plan to "promise" realistically to work "now", if "now" means "tomorrow." Since "now" cannot mean "tomorrow," then it must mean something in the sense of time which can be equated with the connotations of other expressions so often used in *Green,* such as "practicable" and "realistic." Freedom of choice is working in most of our parishes. Some think the progress is too slow—the Government calls it a "glacial movement." Many others think it is going too fast. But any fair-minded man will agree that in most parishes there is progress. The direction is clear. The goal is clear. The direction is right; the goal will be reached. It is no more a problem than of maintaining a steady footing on a narrow catwalk which separates fact from fiction, reality from fantasy, and practicability from chaos. We believe that the Negro and white populations are proud of their communities. We enjoy a state of comparative serenity (especially as contrasted to conditions in schools located in some other sections of the nation), watching together the approach of better times, awaiting together with patience and sure expectation that the achievement of social justice and our collective conscience tells us must come. With every ounce of sincerity which we possess we think freedom of choice is the best plan available. We are not today going to jeopardize the success already achieved by casting aside something that is working and reach blindly into an experimental "grab bag." Rather, we will hear from each school board, as indicated, in March concerning other plans, if such are "practicable" and "reasonable", to supplement freedom of choice.

We have heard these cases "en banc" and rendered this ruling together. The Supreme Court of the United States has stated that "no one plan * * * will do the job in every case." Some of the parishes have made splendid progress. Vermilion, for example, now has 44% of the total of the Negro students in predominantly white schools. We have retained jurisdiction and each case in the future is assigned to the original judge who initiated the orders. That judge will make any additional findings or

conclusions he might deem appropriate. Any motions for rehearing on any specific case should be addressed to the individual judge handling that specific case. Each judge will make further findings, if they are required, in each individual case after receiving the March 1, 1969 report by the respective school boards.[2]

The road to racial harmony has been rocky and often disappointing; but millions of citizens are dedicated to the cause of wiping out second class citizenship and establishing mutual trust in race relations. We do not minimize the problems at hand. These cases must be handled so as not to interfere with the primary, indeed the overriding, purpose of schools—that is, to render the best education possible to all our children. We deem it appropriate to conclude by quoting verbatim the language of the Honorable John R. Brown, Chief Judge of the United States Court of Appeals for the Fifth Circuit:

"Finally, we think it appropriate to sound these comments. We do not seek the burden or responsibility of school operation. We ought not to have it. By now the law is clear. These cases bear many service stripes including many trips to this Court. The aim of *Jefferson* is to lay down sufficiently definitive standards so all can understand and apply them. *Now it should be up to school boards either alone in taking the initiative so obviously called for, or in conjunction with cooperative (it is hoped) efforts of parent, race or similar groups to achieve the goal of race-less public schools.* To be sure, this puts burdens on all sides but this too, is part of constitutional democracy. *The Judiciary is not, cannot be, the universal salvor.* In saying this we believe we express for the District Judge—indeed all of them—a like hope that the

schools soon run without orders of any kind from Courts, Federal or State." United States v. Bessemer et al, 396 F.2d 44, 5th Cir., June 3, 1968. (Emphasis added)

---

**2.** This report will indicate with reasonable specificity each Board's plan for further faculty integration to carry out the commands of the 5th Cir., in *Jefferson*, 372

F.2d 890–894 and *Bessemer*, supra, so any student can choose "among schools that are substantially equal".