Rickey Dale CONLEY et al.

v.

LAKE CHARLES SCHOOL BOARD and Calcasieu Parish School Board et al.

Ura Bernard LEMON et al.

v.

The BOSSIER PARISH SCHOOL BOARD et al., United States of America, Intervenor.

Marcus GORDON et al.

v.

JEFFERSON DAVIS PARISH SCHOOL BOARD et al.

Alfreda TRAHAN et al.

v.

LAFAYETTE PARISH SCHOOL BOARD et al.

Marilyn Marie MONTEILH et al.

v.

ST. LANDRY PARISH SCHOOL BOARD et al.

Virgie Lee VALLEY et al.

v.

RAPIDES PARISH SCHOOL BOARD et al., United States of America, Intervenor.

Joann GRAHAM et al.

v.

EVANGELINE PARISH SCHOOL BOARD et al.

John ROBERTSON et al.

v.

NATCHITOCHES PARISH SCHOOL BOARD et al.

Beryl N. JONES et al.

v.

CADDO PARISH SCHOOL BOARD et al., United States of America, Intervenor.

Catherine BATTISE et al.

v.

ACADIA PARISH SCHOOL BOARD et al.

James H. HENDERSON, Jr., et al.

v.

IBERIA PARISH SCHOOL BOARD et al.

Margarett M. JOHNSON et al.

v.

JACKSON PARISH SCHOOL BOARD et al., United States of America, Intervenor.

Jimmy ANDREWS et al.

v.

CITY OF MONROE, LOUISIANA et al., and Monroe City School Board et al.

Yvornia Decarol BANKS et al.

v.

CLAIBORNE PARISH SCHOOL BOARD et al.

Dorothy Marie THOMAS et al. v. ST. MARTIN PARISH SCHOOL BOARD et al.

Linda WILLIAMS, etc.

v.

MADISON PARISH SCHOOL BOARD et al.

Gwen BOUDREAUX et al.
v.
ST. MARY PARISH SCHOOL
BOARD et al.

Elaine A. GILBERT et al.
v.
WEBSTER PARISH SCHOOL
BOARD et al.

Irma J. SMITH et al.
v.
CONCORDIA PARISH SCHOOL BOARD
et al., United States of Amer-
ica, Intervenor.

Vira CELESTAIN et al.
v.
VERMILLION PARISH SCHOOL
BOARD et al.

UNITED STATES of America, etc.
v.
LINCOLN PARISH SCHOOL
BOARD et al.

UNITED STATES of America, etc.
v.
RICHLAND PARISH SCHOOL
BOARD et al.

Jeremiah TAYLOR et al.
v.
OUACHITA PARISH SCHOOL
BOARD et al.

UNITED STATES of America, etc.
v.
BIENVILLE PARISH SCHOOL
BOARD et al.

UNITED STATES of America
v.
GRANT PARISH SCHOOL BOARD et al.

UNITED STATES of America
v.
DESOTO PARISH SCHOOL
BOARD et al.

UNITED STATES of America
v.
AVOYELLES PARISH SCHOOL
BOARD et al.

UNITED STATES of America
v.
EAST CARROLL PARISH SCHOOL
BOARD et al.

Billy Gene MOORE et al.
v.
WINN PARISH SCHOOL BOARD et al.

Eric CLEVELAND et al.
v.
UNION PARISH SCHOOL BOARD et al.

UNITED STATES of America
v.
WEST CARROLL PARISH SCHOOL
BOARD et al.

UNITED STATES of America
v.
MOREHOUSE PARISH SCHOOL
BOARD et al.

UNITED STATES of America
v.
CATAHOULA PARISH SCHOOL
BOARD et al.

Mitchell WILLIAM et al.
v.
SABINE PARISH SCHOOL
BOARD et al.

Civ. A. Nos. 9981, 10687, 10902, 10903,
10912, 10946, 11053–11055, 11125, 11126,
11130, 11297, 11304, 11314, 11329, 11351,
11501, 11577, 11908, 12071, 12169, 12171,
12177, 12265, 12589, 12721, 12722, 12880,
12924, 14428–14430, 14516.

United States District Court
W. D. Louisiana.
June 5, 1969.

Murphy W. Bell, Baton Rouge, La., Louis Berry, Alexandria, La., Alvin J. Bronstein, Jackson, Miss., Collins, Douglas & Elie, New Orleans, La., Guillory, Guillory & Guillory, Eunice, La., Donald Juneau, New Orleans, La., John W. Mitchell, Jesse H. Queen, U. S. Dept. of Justice, Washington, D. C., Robert P. Roberts, New Orleans, La., Edward L. Shaheen, Shreveport, La., James Sharp, Jr., Monroe, La., Donald Soileau, Mamou, La., Jesse N. Stone, Jr., Shreveport, La., George M. Strickler, Jr., A. P. Tureaud, New Orleans, La., William B. Turner, New York City, Marion O. White, Opelousas, La., for plaintiffs and intervenors.

William H. Baker, Jonesboro, La., W. Sartis Bassett, Winnsboro, La., John B. Benton, Jr., Minden, La., J. Reuel Boone, Many, La., Burton, Roberts & Ward, Baton Rouge, La.. Thompson L. Clarke, St. Joseph, La., W. R. Coenen, Rayville, La., Bertrand DeBlanc, Lafayette, La., W. C. Falkenheiner, Vidalia, La., Foley, Judell & Morel, New Orleans, La., J. Y. Fontenot, Opelousas, La., L. O. Fusilier, Ville Platte, La., Marvin F. Gahagan, Natchitoches, La., Robert U. Goodman, Shreveport, La., Jack P. F. Gremillion, Baton Rouge, La., Hayes, Harkey & Smith, Monroe, La., Hal R. Henderson, Arcadia, La., Fred L. Jackson, Homer, La., Harry J. Kron, Jr., Thibodaux, La., Albin P. Lassiter, Monroe, La., Ragan D. Madden, Ruston, La., Bernard N. Marcantel, Jennings, La., Ronald C. Martin, Natchitoches, La., E. Rudolph McIntyre, Winnsboro, La., Louis H. Padgett, Jr., Bossier City, La., Pipes & Pipes, Monroe, La., John A. Richardson, Shreveport, La., Charles A. Riddle, Jr., Marksville, La., Frank T. Salter, Lake Charles, La., Thomas A. Self, Many, La., Kermit M. Simmons, Winnfield, La., James T. Spencer, Farmerville, La., Knowles Tucker, New Iberia, La., E. O. Ware, III, Alexandria, La., Sam Wells, Colfax, La., for defendants.

Before DAWKINS, Chief Judge, and HUNTER and PUTNAM, District Judges.

PER CURIAM.

On November 14, 1968, this court, sitting en banc, pursuant to the direction of the United States Court of Appeals for the Fifth Circuit in Adams et al. v. Mathews, et al., 1968, 403 F.2d 181, received evidence and heard arguments to determine whether the freedom of choice plans for desegregation of the public school systems in twenty-nine parishes located in the Western District of Louisiana, were adequate to "convert the dual system to a unitary system in which racial discrimination would be eliminated root and branch." We concluded that freedom of choice, under the circuit-wide uniform decree required by United States v. Jefferson County Board of Education (5 Cir.1966), 372 F.2d 836, aff'd en banc, 5th Cir.1967, 380 F.2d 385, cert. den., Caddo Parish School Bd. v. United States, 1967, 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103, was a permissible means to a constitutionally required end, "the complete abolition of segregation and its effects." Conley v. Lake Charles School Board, and related cases, reported at D.C., 293 F.Supp. 84. We said then and, with all deference to the Court of Appeals, we are impelled to repeat:

> "With every ounce of sincerity which we possess we think freedom of choice is the best plan available. We are not today going to jeopardize the success already achieved by casting aside something that is working and reach blindly into an experimental 'grab bag.'" 293 F.Supp. at p. 88.

During the course of many hearings in these cases, school officials have repeatedly asserted that any other plan would be disruptive of public education in many of the parishes before us. Some have said that chaos will result.

This Court recognized the problems faced by these school boards.

Our judgment of November 14, 1968, has been reversed and we now have been mandatorily directed by the official decree of the Fifth Circuit Court of Appeals to enter an order requiring each School Board to formulate a new plan to bring about integration, effective September, 1969, a plan that "promises realistically to work *now*."

The decision of the Court of Appeals is self-executing. It directs that each School Board shall submit to this court a proposed new plan for its school system, effective with the commencement of the 1969–70 school term. It provides, however, that if the district court desires "to require a uniform type of plan, or a uniform approach to the formulation of plans, * * *" it shall enter its order to that effect within ten days of the date of the mandate (May 28, 1969). After consultation, we agree that uniformity of approach is desirable and is in the best interest of public education in this District.

In Whitenberg, et al. v. Greenville County School District, D.C.S.C., 1969, 298 F.Supp. 784, the district court of South Carolina, sitting en banc, referred the school districts of that state to the Department of Health, Education and Welfare, Office of Education, for assistance and approval in the formulation of new plans for desegregation required in the light of Green v. County School Board, 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716; Raney v. Board of Education, 1968, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727; and Monroe v. Board of Commissioners, 1968, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733. We agree with the reasons stated by the Judges of South Carolina in that case, and will require the School Boards now before us to take like action.

In formulating plans, the Boards and H.E.W. of necessity must consider the particular local problems of each school system. Only the Boards and H.E.W. have the expertise necessary to solve such problems effectively.* These law[']

---

* In support of this position, we must note the following views given by Honorable Warren E. Burger, then an active judge on the United States Court of Appeals for the District of Columbia Circuit, and now the nominee of President Nixon to be Chief Justice of the United States, in a dissenting opinion written by him as recently as January 21, 1969, in Smuck v. Hobson, 408 F.2d 175, at pages 196 and 197:

BURGER, Circuit Judge (with whom Circuit Judge Tamm joins):

"We join in Judge DANAHER'S opinion and his view that sound principles of judicial restraint command that the mandate be vacated assuming, *arguendo*, that a subject so complex and elusive, and so far beyond the competence of judges, would have warranted judicial action in the first instance.

"We add a brief comment to underscore what we believe is implicit in the principal opinion, and indeed in Judge DANAHER'S dissent. The holding of the District Court is not affirmed as written *but only as construed* by four members of this court. Even a cursory reading of the principal opinion reveals that as so construed, the mandate under review *is* essentially advisory to the former school

board which has ceased to exist. As we see it the new school board is at liberty to make such use of it as it desires in much the same way as it may derive useful guidance from the Passow Report.

"Several commentators have expressed views which undergird what Judge DANAHER has said as to the need for caution and restraint by judges when they are asked to enter areas so far beyond judicial competence as the subject of how to run a public school system. We have little difficulty taking judicial notice of the reality that most if not all of the problems dealt with in the District Court findings and opinion are, and have long been, much debated among school administrators and educators. There is little agreement on these matters, and events often lead experts to conclude that views once held have lost their validity. The commentary from various sources, including law reviews, tends to supply strong support for Judge DANAHER'S very sound view on the need for judicial restraint. The Harvard Law Review comments:

* * * [T]he limits upon what the judiciary can accomplish in an active role are an additional reason for circumspection, particularly in an area

where the courts can offer no easy solutions.

\* \* \* A court applying the *Hobson* doctrine must necessarily resolve disputed issues of educational policy by determining whether integration by race or class is more desirable; whether compensatory programs should have priority over integration; whether equalization of physical facilities is an efficient means of allocating available resources for the purpose of achieving overall equal opportunity. There is a serious danger that judicial prestige will be committed to ineffective solutions, and that expectations raised by *Hobson*-like decisions will be disappointed. Furthermore, judicial intervention risks lending unnecessary rigidity to treatment of the social problems involved by foreclosing a more flexible, experimental approach.

The *Hobson* doctrine [Hobson v. Hansen [D.C.], 269 F.Supp. 401 (1967), Honorable J. Skelly Wright, Circuit Judge, sitting as a District Judge] can be criticized for its unclear basis in precedent, its potentially enormous scope, and its imposition of responsibilities which may strain the resources and endanger the prestige of the judiciary. \* \* \*

Hobson v. Hansen; Judicial Supervision of the Color-Blind School Board, 81 HARV.L.REV. 1511, 1527, 1525 (1968) (footnote omitted).

The Stanford University Law Review had these comments:

It seems to have been the very magnitude of these problems that led the [District] court to search for remedies. In a brief paragraph entitled 'Parting Word' the court, anticipating the adverse reaction its substantially unprecedented intervention has indeed provoked, set forth its apologia in these terms:

It is regrettable, of course, that in deciding this case this court must act in an area so alien to its expertise. It would be far better indeed for these great social and political problems to be resolved in the political arena by other branches of government. But these are social and political problems which seem at times to defy such resolution. In such situations, under our system, the judiciary must bear a hand and accept its responsibility to assist in the solution where constitutional rights hang in the balance.

\* \* \* if at this time, however, such problems seem to 'defy' social and

political resolution, they are not for that reason more open to resolution by the courts. The responsibility lies first with those whose area of expertise comprehends feasible solutions.

Hobson v. Hansen: The De Facto Limits on Judicial Power, 20 STAN.L.REV. 1249, 1267 (1968) (footnotes omitted).

"After enumerating a number of objections to the Constitutional underpinnings of a Hobson v. Hansen-type opinion, Professor Kurland of the University of Chicago goes on to state:

And my third point of difficulty with the suggested constitutional doctrine of equality of educational opportunity is that the Supreme Court is the wrong forum for providing a solution. \* \* \*

When we turn to the school desegregation cases, the problem most closely analogous to the one we are considering here, we find a more dismal picture of what must be acknowledged to be the Supreme Court's failure rather than its success. The *New York Times* in its annual educational survey for 1968, thirteen and one-half years after Brown v. Board of Education, suggests that we are hardly any further along the line toward school desegregation than we were in 1954.

The Washington, D. C., example is too much with us. And everything that Judge Skelly Wright can do will not afford an integrated school system for the Nation's capital. *All that he can accomplish is to assure that the brighter students receive no better education within the system than the other students.* (Emphasis added.)

As I have suggested, it is perhaps because of the fact that local governmental units, especially those located in metropolitan areas, cannot or will not bring about racial desegregation that some are looking to the equal educational opportunity concept to break down the municipal boundaries in order to include suburban areas under the same umbrella as that which covers the slum schools. Absent a reversal of the Court's decision in Pierce v. Society of Sisters, however, the escape route of private education will not be closed. And a reversal of that decision will arouse the opposition not only of the suburbanites but of organized religions as well. Kurland, Equal Educational Opportunity: The Limits of Constitutional Jurisprudence Undefined, 35 U.CHI.L.REV. 583, 592, 594, 595 (1968) (Footnotes omitted).

"*This court—and courts generally—would do well to heed these sobering observations.*" (Emphasis added.)

suits are all class actions for black citizens, in which only a few voices heretofore have been heard. Our concept of community participation in the control of education requires that the desires of all responsible elements of the local society, the black community and the white community, be determined and considered. In formulating new plans, defendant School Boards and H.E.W. should give utmost consideration to these desires. After all, it is the people of this state and nation whose interests and welfare must be served; it is to the people that state and federal officialdom owes its very existence, a fact too often forgotten.

In keeping with the Mandate of the Court of Appeals dated May 28, 1969, in United States et al. v. St. Helena Parish School Board et al., and consolidated cases:

It is hereby ordered, that all defendant School Boards shall promptly submit to the Office of Education, H.E.W., their existing method of operation, along with the changes proposed by them under the order of this Court issued November 14, 1968, and shall within thirty days of the date of this Order develop in conjunction with the experts of such office and submit to this Court, a new plan of operation for each school system subject hereto, to become effective with the commencement of the 1969–70 school year, insuring the operation of such system on a unitary, nondiscriminatory basis, conformable to the constitutional rights of the plaintiffs in these actions and meeting the standards required by *Green, Raney* and *Monroe, supra,* giving due consideration to the practical and administrative problems of each defendant Board. Such plan, if agreed upon by the defendant Board in question and H.E.W. will be approved by the Court, subject to the right of plaintiffs to file objections or suggested amendments thereto within ten (10) days from the date such plan is filed.

If in any instance an agreed plan is not forthcoming, the defendant Board or Boards shall file its recommended plan;

H.E.W. is requested to file its recommended plan for such defendant Board or Boards, and plaintiffs may also file a recommended plan, all within the thirty (30) day period dating from this Order, after which the court will, with or without a hearing as necessities may require, proceed to enter its decree.

In executing the foregoing Order, all parties are directed to proceed without delay in order that the new plans "shall be completed and approved by the district courts no later than July 25, 1969", as is required by the Mandate of the Court of Appeals.