Linda F. COATES, mother and next friend of Monica J. Coates, a minor, et al., Plaintiffs,

v.

ILLINOIS STATE BOARD OF EDUCA-TION et al., Defendants.

No. 75 C 3362.

United States District Court, N. D. Illinois, E. D.

Aug. 3, 1976.

Aldus S. Mitchell and Sophia H. Hall of McCoy, Ming & Black, Chicago, Ill., for plaintiffs.

William J. Scott, Atty. Gen., State of Ill., and Charles J. Pesek, Asst. Atty. Gen., Chicago, Ill., for Illinois State Bd. of Ed.

Pedderson, Menzimer, Conde, Stoner, Ferolie, Spelman & Killoren by Dale F. Conde, Rockford, Ill., for Bd. of Ed. of Rockford School Dist.

R. Dennis Claessens and John F. Atkinson, Chicago, Ill., for School Bd. of Winnebago County.

Jay S. Judge and James R. Schirott of Judge & Schirott, Ltd., Park Ridge, Ill., for Bd. of Ed. of Winnebago County.

Michael M. Mihm, State Atty., Howard V. Thomas, Asst. State Atty., Peoria County, Peoria, Ill., for Bd. of School Trustees in Peoria County.

William McD. Frederick and Julian E. Cannell of Kavanagh, Scully, Sudow, White & Frederick, Peoria, Ill., David C. Roston of Lieberman, Levy, Baron & Stone, Ltd., Chicago, Ill., for Bd. of Ed. of Peoria School Dist. 150.

Martin Rudman, State Atty., Nicholas E. Sakellarion, Asst. State Atty., Will County, Joliet, Ill., for Will County Board of School Trustees.

## MEMORANDUM OPINION

GRADY, District Judge.

This cause comes on for ruling on the motions of the various defendants to dismiss the complaint and the motion of the Peoria defendants for a transfer of the cause to the Southern District of Illinois as it relates to them.

It is not entirely clear to the court whether the complaint is based upon one theory or two. Therefore, this opinion will address both of the theories which are or may be involved.

The first theory, which plaintiffs clearly do advance, is this: The defendant school districts have been found by the State Superintendent to be segregated; that segregation has not been eliminated; therefore, those defendants who, under state law, have the responsibility for eliminating it have denied plaintiffs' federal constitutional rights to equal protection of the laws and to due process of law.

Plaintiffs do not expressly address themselves to the question of *de facto* versus *de jure* segregation, and this is why it is difficult for the court to determine whether they are proceeding on one theory or on alternate theories. Plaintiffs may be contending that, although *de jure* segregation must be alleged and proved, the failure of defendants to take appropriate action to desegregate *is de jure* segregation, regardless of how the original condition of segregation came about. Plaintiffs cite two cases which they say support their "affirmative action" theory, but they do not explain how these cases apply to the allegations of the instant complaint. In *Keyes v. School District No. 1, Denver, Colorado,* 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973), the Supreme Court held that, where it had been shown that certain schools in a district had "engaged over almost a decade after 1960 in an unconstitutional policy of deliberate racial segregation" (p. 192, 93 S.Ct. p. 2689) with respect to certain of its schools, this shifted to the school district ". . . the burden of proving that other segregated schools within the system are not also the result of intentionally segrega-

tive actions." (p. 208, 93 S.Ct. p. 2697). This court is unable to perceive how *Keyes* applies to the facts alleged here, where there is no suggestion that the condition of segregation found by the superintendent came about as a result of any conduct on the part of the school officials. The second case relied upon by plaintiffs, *Oliver v. Michigan State Board of Education*, 508 F.2d 178 (6th Cir. 1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449, involved a condition of segregation found by the district court to have been caused, at least in part, by deliberate policies of the school board. These findings were affirmed by the Court of Appeals, which held that there was adequate evidence to show that the school board had purposely promoted segregation by its policies in regard to attendance boundaries, school construction and faculty staffing (508 F.2d at 184, 185). Again, therefore, the relevance of this case to the instant complaint is obscure.

If plaintiffs were correct, and failure to eliminate a *de facto* condition of segregation were itself *de jure* segregation, then, of course, the distinction between *de facto* and *de jure* would be non-existent.

Plaintiffs assert that the state statute requiring desegregation, and the finding by the Superintendent that these particular districts are not in compliance with the statute, somehow create federal rights which would not exist in the absence of such a statute or such a finding. Plaintiffs cite no authority for this proposition, and we are satisfied that there is none. It is quite clear that the Illinois statute in question applies to *de facto* segregation and requires its elimination. This statute, the Armstrong Act, is entirely independent of any requirement of the federal constitution. See the discussion in *Tometz v. Board of Education*, 39 Ill.2d 593, 597, 237 N.E.2d 498 (1968), where the Court, in upholding the Act, pointed out that the federal cases dealing with *de jure* segregation are simply not pertinent to the problem addressed by the Armstrong Act.

■ If the imperfect or dilatory enforcement of a state law were, *ipso facto*, a denial of equal protection and due process under the federal constitution, the federal courts would become monitors of the enforcement of every state law and municipal ordinance in the land. This is obviously not what is contemplated by the constitutional provisions and federal statutes invoked by the plaintiffs, and we must, therefore, reject the contention that a failure to enforce the state statute requiring desegregation creates a federal right of action.

■ We turn now to what may be the plaintiffs' alternative theory—namely, that *de jure* segregation is not required and that the state has an affirmative duty to eliminate *de facto* segregation in the schools. Precisely this contention was urged by Justices Douglas and Powell in their concurring opinions in *Keyes, supra*, and it occurs to this court that this may be why the plaintiffs cited that case. The Court of Appeals for the Fifth Circuit has adopted this view. *Cisneros v. Corpus Christi Independent School District*, 467 F.2d 142, 149 (5th Cir. 1972), *cert. denied*, 413 U.S. 920, 93 S.Ct. 3053, 37 L.Ed.2d 1041 ("That there was an absence of state action involved in creating the city's residential pattern is of no significance."). While this argument is not without its logic, it runs counter to the established law of this Circuit, which this court is bound to follow. The Court of Appeals for this Circuit has squarely held that the federal constitution does not require changes in school attendance boundaries to eliminate *de facto* segregation. *Bell v. School City of Gary, Indiana*, 324 F.2d 209, 213 (7th Cir. 1963), *cert. denied*, 377 U.S. 924, 84 S.Ct. 1223, 12 L.Ed.2d 216; *Lawlor v. Board of Education of City of Chicago*, 458 F.2d 660, 662 (7th Cir. 1972), *cert. denied*, 413 U.S. 921, 93 S.Ct. 3045, 37 L.Ed.2d 1043.

■ Because this complaint does not allege that the underlying condition of school segregation was caused, in whole or in part, by any purposeful action of any of the defendants, we conclude that it fails to state a cause of action.

In the event a reviewing court should deem the complaint sufficient, we would have to face at least two other problems after a remand: The question of whether there is a proper joinder and the question of whether this is a proper class action. To avoid multiple appeals, we deem it appropriate to express our views on these two questions at this time, so that, if they are erroneous, we can receive appropriate guidance on remand.

We do not believe that the joinder of the separate school districts in one action is proper. If the case were to be tried, the questions of fact would be different as among the various districts. Indeed, we can think of no common question of fact that would be involved. If this case were to be tried, this court would sever the Peoria defendants and transfer their case to the Southern District of Illinois. The Joliet and Rockford cases would also be severed from each other, and, depending upon the results of a closer look at the conveniences involved, the Rockford case might be transferred to the Western Division of this District.

From what has been said in regard to the matter of joinder, it is obvious that in the view of this court the proposed class, which lumps plaintiffs from the several districts together, is not acceptable. The factual differences inherent in the very fact of the separate districts, geographically distant from one another, make this proposed class an implausible creature which could not possibly satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.

This cause is dismissed as to all defendants, with prejudice.