Jorge and Marisa **GOMEZ**, et al., Plaintiffs,

v.

**ILLINOIS STATE BOARD OF EDUCATION**, et al., Defendants.

No. 85 C 3744.

United States District Court, N.D. Illinois, E.D.

July 24, 1985.

Raymond G. Romero, Fernando Colon-Navarro, Mexican American Legal Defense and Educational Fund, Chicago, Ill., Joa-

quin Avila, Norma Cantu, Mexican American Legal Defense and Educational Fund, San Francisco, Cal., for plaintiffs.

Neil F. Hartigan, Atty. Gen. of Illinois by Laurel Black Rector, Asst. Atty. Gen., Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Before the Court is the defendants' motion to dismiss the complaint of the purported plaintiff class, pursuant to Fed.R. Civ.P. 12(b)(6), in an equal education opportunity case. For the reasons stated below, the defendants' motion is granted and the plaintiffs' complaint is dismissed. The plaintiffs are directed to file an amended complaint naming the correct parties as defendants.

## I. FACTS

This is a class action brought by the named plaintiffs on behalf of Spanish-speaking children of limited English proficiency who are enrolled in various local school districts in Illinois. The named plaintiffs are students enrolled in either Iroquois West School District # 10 or Peoria School District # 150. Plaintiffs claim that their school districts have not tested them for English language proficiency nor have they received bilingual instruction or compensatory instruction. In support of this claim, plaintiffs assert that the Illinois State Board of Education and Ted Sanders, the Illinois State Superintendent of Education, have violated Chapter 122, Section 14C–3 of the Illinois Revised Statutes by failing to perform their duties thereunder.

That state statute governs transitional bilingual education in the Illinois state school system. The statute requires school districts to identify students of limited English-speaking ability and classify them according to language, grade, age or achievement level. Any school district with 20 or more students of limited English speaking proficiency must establish a transitional bilingual education program. The Illinois State Board of Education's respon-sibility under this statute is to develop certain regulations which must be adhered to by the school districts.

Finally, plaintiffs argue that these alleged violations of state law constitute violations of their federal rights under the Equal Educational Opportunities Act of 1974 (EEOA), 20 U.S.C. § 1703(f), Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and regulations promulgated thereunder, 34 C.F.R. § 100.3 *et seq.*, § 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution. Plaintiffs seek a declaratory judgment that defendants have violated § 1703(f) and seek injunctive relief to remedy the violation. Specifically, they seek a mandatory injunction requiring defendants to provide local school districts with uniform standards for the identification and instruction of limited English-proficient students. They also seek programs for limited English-proficient students in school districts where there are less than 20 such students as well as a means by which parents may contest placement of students in a linguistic remedial program.

## II. DISCUSSION

### A. *The Eleventh Amendment Defense*

In support of their motion to dismiss, the defendants argue that, at its heart, plaintiffs' complaint alleges violations of state law in themselves and as violations of federal law. Further, defendants contend that, since state law violations are at the core of plaintiffs' action, the relief granted to the plaintiffs would necessarily involve an order requiring the defendants to comply with state law. Therefore, defendants conclude that plaintiffs' case is barred by the Eleventh Amendment because the relief most likely to be awarded is barred by *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

In *Pennhurst*, the class of plaintiffs contended that the conditions of confinement at a state institution for care of the mentally retarded violated their federal constitu-

tional and statutory rights as well as the Pennsylvania Mental Health and Mental Retardation Act. The only issue considered by the United States Supreme Court was whether "... the Eleventh Amendment prohibited the District Court from ordering state officials to conform their conduct to state law ..." *Id.* at 906. The Supreme Court first noted that suits against a state or its agencies are barred by the Eleventh Amendment, as is a suit against state officials, when the state is the real party in interest. *Id.* at 908–909. An exception to this rule is that a suit challenging the constitutionality of a state official's action or a state statute is not one against the State. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

In *Pennhurst,* the Supreme Court concluded that "... a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when—as here—the relief sought and ordered has an impact directly on the state itself." *Id.* 104 S.Ct. at 917. In its reasoning, the Court found that a federal court's instructions to state officials on how to conform their conduct to state law constitute too great an intrusion on state sovereignty and therefore conflict "directly with the principles of federalism that underlie the Eleventh Amendment." *Id.* at 911. Finally, the Court held that its above holding applies "as well to state-law claims brought into federal court under pendent jurisdiction." *Id.* at 919.

■ Plaintiffs counter that *Pennhurst* does not apply because, in this case, defendants' failure to supervise local districts in their identification and placement of limited English-proficient students is itself a violation of federal law. Specifically, plaintiffs complain that the defendants' failure to make uniform guidelines for identification of limited English-proficient students constitutes a "failure by an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs." 20 U.S.C. § 1703(f). Therefore, since defendants' alleged failure

to write guidelines under state law also violates federal law, plaintiffs conclude that an order compelling defendants to comply with state law is really meant to cure their violation of federal law and therefore *Pennhurst* should not apply to bar such relief.

Plaintiffs' attempt to distinguish *Pennhurst* from this case is unpersuasive. While it is correct that the Supreme Court in *Pennhurst* was not faced with this argument which links a violation of state law to a violation of federal law, the Court did expressly consider the effect of the Eleventh Amendment on the doctrine of pendent jurisdiction over state law claims. *Id.* at 917. As noted above, the Court held that the Eleventh Amendment "principle applies as well to state-law claims brought into federal court under pendent jurisdiction." *Id.* at 919. This holding persuades this Court that the Supreme Court in *Pennhurst* meant for state and federal law claims to be dealt with separately in an Eleventh Amendment analysis. Therefore, the Court will treat the plaintiffs' claims for relief as twofold: one relief for violation of state law and another relief for violation of federal law.

### B. *Relief Under State Law*

■ As set forth in *Pennhurst,* the Eleventh Amendment bars an action for relief against state officials based solely on state law where the relief would impact directly on the state. *Pennhurst, supra,* 104 S.Ct. at 917. In the present case, the plaintiffs seek a mandatory injunction requiring the Illinois State Board of Education and the Illinois State Superintendent of Education to provide local school districts with uniform standards for the identification and instruction of limited English-proficient students. Insofar as this requested relief requires the defendants to comply with the Illinois statute establishing transitional bilingual education programs, Ill.Rev.Stat. Ch. 122, § 14C–3, the Court finds that the relief is barred by *Pennhurst* and the Eleventh Amendment because the injunction will impact directly on the state and is based solely on state law. Therefore, the

plaintiffs' complaint is dismissed as to those portions based on § 14C–3 and requesting compliance thereunder.

### C. *Relief Under Federal Law*

#### 1. *20 U.S.C. § 1703(f)*

Plaintiffs assert that defendants have abdicated their responsibility under 20 U.S.C. § 1703(f) by failing to make guidelines under state law. This assertion is untenable in light of the federal and state statutes. Section 1703(f), as cited above, sets forth a general duty on the part of a state not to discriminate in the area of educational opportunity. Neither § 1703(f) nor any other section of the EEOA specify the type of program which a state should enact in promoting transitional bilingual education. The prohibition in § 1703(f) is against inaction by a state or local school district in remedying language barriers.

█ Since no specific remedy is set forth in the EEOA for implementing transitional bilingual education, the state is free to set up its own program and delegate to local school districts the primary burden of implementing it. Once a state has passed a statute setting up a transitional bilingual education program and once the state board of education has drawn up and enacted guidelines for the program's implementation, the burden of implementing the program guidelines shifts to the local school district. This conclusion is especially true for the transitional bilingual education program set up under Illinois law. Ill.Rev. Stat. ch. 122 § 14C–3.

Under Illinois law, the only role specified for the State Board of Education is drafting regulations. *Id.* The State Board has fulfilled this duty in Title 23 of the Illinois Administrative Code, Subtitle A, Chapter I, Subchapter f, Part 228, entitled Transitional Bilingual Education (1984). These regulations define children of limited English-speaking ability as those children falling within language levels I–IV. § 228.10(e) & (f). § 228.10(1) defines six Levels of Language Fluency.

The administration of a census to determine how many children are of limited English-speaking ability is delegated to the superintendent of each school district. § 228.60(b)(1). The census must be conducted by persons who can speak and understand the necessary languages of the various groups of limited English-speaking children. § 228.60(b)(2). In addition, the local school district shall seek cooperation from local agencies, organizations or community groups if assistance is needed in determining the students' levels of language fluency. § 228.60(b)(3).

Finally, parents or legal guardians of children who have not been counted in the census as possessing limited English-speaking ability may request placement into a transitional bilingual education program. The school district's determination upon such request is mandatory and appealable to the Superintendent of the Educational Service Region. *See also* § 228.80(c) (covering parental protests to placement, transfer, and withdrawal of students in transitional bilingual education programs).

█ In light of these detailed regulations, it is clear to the Court that the plaintiffs either have never read these regulations promulgated by the State Board of Education or really mean to assert a cause of action against the local school districts in which the named plaintiffs are enrolled. In either event, the appropriate cause of action in this case is against the local school districts and not a statewide remedy, which has doubtful merit, for failure to make appropriate guidelines. The Court finds support for its conclusion that this § 1703(f) action should be brought against the local school districts in *United States v. State of Texas*, 680 F.2d 356 (5th Cir.1982).

In *State of Texas*, the Fifth Circuit Court of Appeals interpreted § 1703(f) as giving state and local authorities substantial latitude to select programs and techniques of language remediation suitable to meet their individual problems. The Fifth Circuit then noted that the Texas Act, like the Illinois Act here, gave even greater latitude to the local school districts by setting up

certain minimums in the area of transitional bilingual education programs. *See* Ill. Rev.Stat. ch. 122, § 14C–3. In light of these observations regarding the federal and state statutes, the Fifth Circuit concluded that a statewide remedy was inappropriate.

In support of its conclusion, the Fifth Circuit reasoned:

It follows, then, that whether the effect of a local language program, state-mandated or not, constitutes appropriate action to deal with language barriers faced by the students of a given school district will of necessity be an essentially local question. Either the actual, local program as it operates on actual, local students is an appropriate response to their language problems or it is not. If it is, then section 1703(f) has been complied with as to these students; if not, it has not been. And since the type and level of program to be instituted is in great part left to the individual district, it necessarily follows that one district may be in compliance, while another next door to it may not. We fail to see how such questions as these can be properly resolved in the absence of the school district concerned or how they can be effectively dealt with on a statewide basis.

*Id.* at 374. *Accord. Coates v. Illinois State Bd. of Ed.*, 419 F.Supp. 25 (N.D.Ill. 1976); *see contra Idaho Migrant Council v. Board of Education*, 647 F.2d 69 (9th Cir.1981).

Since it finds persuasive the result in *State of Texas* and its interpretation of § 1703(f), the Court finds that the state defendants are not the proper parties in this action brought under § 1703(f). In addition, the Fifth Circuit in *State of Texas* directed the district court, "in the event that individual school districts are made parties hereafter, to give serious consideration to such motions for change of venue as may result—to the end that, in the absence of some overriding reason to the contrary, local school districts may litigate in their local federal courts." *State of Texas, supra*, 680 F.2d at 374. Following the Fifth

Circuit's lead, the Court dismisses the plaintiffs' complaint and directs the plaintiffs to file a new complaint under § 1703(f) against the local school officials in the federal district court where the school districts are located.

2. *The Fourteenth Amendment, 42 U.S.C. § 1983, and Title VI, 42 U.S.C. § 2000d.*

■ After the Supreme Court case of *University of California Regents v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), it now appears that Title VI, like the Equal Protection Clause of the Fourteenth Amendment, is violated only by conduct animated by an intent to discriminate and not by conduct which, although benignly motivated, has a differential impact on persons of different races. *Castaneda v. Pickard, supra*, 648 F.2d at 1007. Thus, while *Bakke* did not expressly overrule *Lau v. Nichols*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974), it renders that decision obsolete, insofar as it found a violation of Title VI merely on proof of discriminatory impact without any showing of discriminatory intent, as required by *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) and subsequent cases. *United States v. State of Texas*, 506 F.Supp. 405, 431 (E.D.Tex.1981), *rev'd on other grounds*, 680 F.2d 356 (5th Cir.1982). If Title VI is coextensive with the Equal Protection Clause, *Bakke, supra*, 438 U.S. at 287, 98 S.Ct. at 2746, purposeful discrimination must be shown to make out a statutory violation. *State of Texas, supra*, 506 F.Supp. at 431. This rule applies to § 1983 claims where the underlying cause of action is for racial discrimination as violative of the Equal Protection Clause. 6 Fed.Proc.L.Ed. § 11:179, p. 196.

■ In the present case, the plaintiffs allege neither purposeful discrimination nor past de jure discrimination in the defendants' attempts to enact transitional bilingual education programs. Therefore, the plaintiffs' complaint, based on Title VI, the Equal Protection Clause and § 1983, is dismissed because it does not allege purposeful discrimination.

### III. CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted as to plaintiffs' state law claims and federal law claims, based on the Fourteenth Amendment, Title VI, 42 U.S.C. § 2000d and 42 U.S.C. § 1983. Plaintiffs' complaint based on 20 U.S.C. § 1703(f) is dismissed as to the state defendants and plaintiffs are directed to file a new complaint naming local school officials as defendants in the federal district court where the school districts are located.[1]

IT IS SO ORDERED.

---

**1.** For the convenience of the parties, the Court notes that the Iroquois West School District #10, Onarga, Illinois, is located in the Danville Division of the U.S. District Court for the Central District of Illinois. The Peoria School District #150, Peoria, Illinois, is located in the Peoria Division of the U.S. District Court for the Central District of Illinois.